STATE of Iowa, Appellee,

v.

Lawrence Joseph DVORSKY, Appellant.

No. 66412.

Supreme Court of Iowa.

July 21, 1982.

Francis C. Hoyt, Jr., Appellate Defender, and Charles L. Harrington, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Michael K. Jordan, Asst. Atty. Gen., and Susan Weller, Asst. Linn County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, HARRIS, and LARSON, JJ.

REYNOLDSON, Chief Justice.

After a two-car collision allegedly caused by defendant's reckless driving resulted in the death of the driver of the other vehicle, a jury found defendant guilty of involuntary manslaughter, a violation of Iowa Code subsection 707.5(1) (1979). He appeals from a judgment sentencing him to five years' imprisonment. We affirm in part, reverse in part, and remand for resentencing.

At about 1:30 a. m. on April 20, 1980, defendant was driving his 1974 Corvette auto northbound on a blacktop road between Marion and Alburnett in Linn County. There were three other persons in this two-seated sports car, a girl on the console and a girl sitting on the lap of a young man occupying the passenger seat. The victim was driving his 1976 Triumph sports car southbound with Timothy Levasseur as a passenger. The night was clear and dry. About five miles south of Alburnett the road makes a long "S" curve. This collision occurred in the northernmost curve, where the road, from the perspective of a northbound driver, turns from northwesterly to north. Signs were posted on both sides of this curve indicating a maximum speed of forty-five miles per hour.

There was substantial evidence from investigating officers that the Corvette, on the inside or east lane of the curve, first laid down 139 feet of scuff or "yaw" tire

marks.[1] The tracks indicated the Corvette next traveled with the right wheels on the east graveled shoulder a distance of twenty-six feet and then, with brakes applied, proceeded seventy-seven feet sharply to the west across the centerline and into the Triumph. The point of impact was two feet five inches west of the centerline. The Triumph was impelled into the west ditch. The Corvette, spinning at least one and one-half times, proceeded over 123 feet to the west ditch. Both vehicles were demolished, the major damage being to the front of the Corvette and the left front end of the Triumph.

Two of the investigating officers were permitted to express their opinion that defendant was driving his car at least seventy miles per hour. A third deputy was permitted to express in an opinion that defendant's speed was "plus eighty" miles per hour. Levasseur, the passenger in the victim's car, testified the Corvette was traveling seventy to eighty miles per hour and "fishtailing all over the road."

Defendant and his passengers variously testified the Corvette was traveling forty to fifty miles per hour. They also testified the Triumph was in their northbound lane, an alleged fact they failed to tell the officers on the night of the accident. At that time defendant was claiming a front tire blew out, an assertion controverted by investigating officers who examined the tire tracks and the tires following the collision. Defendant had been drinking at a party and at a tavern but passed a field Alkasensor test. The victim's blood tested "0.49," which the deputy medical examiner characterized as not a "significant blood alcohol concentration."

Defendant alleges trial court erred in admitting the opinions of the investigating officers relating to the speed of defendant's car, in failing to submit to the jury involuntary manslaughter under Iowa Code subsection 707.5(2) as a lesser included offense, in refusing to clarify the definition of "willful and wanton" following a jury request, and in abusing its discretion by sentencing defendant to a five-year term.

## I. *Opinion evidence.*

■ Defendant's objections to the opinion testimony of the police officers who were at the scene were based on lack of foundation[2] and qualifications. He thus raises two of the threshold requirements for expert opinion testimony: (1) the expert must be qualified, and (2) the facts upon which the witness is relying must be stated in the record. *Ganrud v. Smith*, 206 N.W.2d 311, 314 (Iowa 1973); *Bernal v. Bernhardt*, 180 N.W.2d 437, 439 (Iowa 1970).

■ We start our analysis by observing that Iowa is committed to a liberal rule that allows opinion testimony if it will aid the jury and is based on special training, experience, or knowledge with respect to the issue in question. *Haumersen v. Ford Motor Co.*, 257 N.W.2d 7, 11 (Iowa 1977); *Doe v. Ray*, 251 N.W.2d 496, 501 (Iowa 1977). In *State v. Knudtson*, 195 N.W.2d 698, 700 (Iowa 1972), we quoted the following from *State v. Mayhew*, 170 N.W.2d 608, 619 (Iowa 1969):

> [T]he receipt of opinion evidence, whether lay or expert, rests largely in the trial court's discretion and we are loathe to interfere with the exercise thereof unless it has been manifestly abused to the prejudice of the complaining party.

See *Wadle v. Jones*, 312 N.W.2d 510, 515 (Iowa 1981); *Duke v. Clark*, 267 N.W.2d 63, 66 (Iowa 1978).

1. These marks were not caused by braking, but rather were caused by the friction heat of tires on the blacktop as the driver, by turning right, sought to overcome the straight-line momentum of the car.

2. The State has not raised the issue that the general objection "no proper foundation" provides no basis for reversible error. *See Heth v. Iowa City*, 206 N.W.2d 299, 302 (Iowa 1973); *Hedges v. Conder*, 166 N.W.2d 844, 856 (Iowa 1969). From other language in the objection we may infer defendant was complaining about the absence of variables required to be considered in a mathematical computation of speed.

■ The other two law officers had more extensive training and experience than Officer Gould, who had been a deputy sheriff for Linn County about four years when he investigated this accident. He had prior experience as police chief in West Branch and two or three days of instruction in accident investigation at the Law Enforcement Academy. He had investigated accidents before the collision in question, five or six of which had involved fatalities. Following his investigation he experimented negotiating this curve in his own vehicle at fifty-five, sixty-five, and seventy-five miles per hour. Later he was sent to the accident investigation school at Northwestern University. He knew the approximate applicable coefficient of friction, but did not attempt an exact mathematical computation of speed through the use of the formula in this instance. See generally Bernal, 180 N.W.2d at 440–41. Apparently the minimal length and unusual location of the braking marks left by the Corvette's tires did not permit application of the mathematical formula.

This officer expressed not an opinion of exact speed, but fixed a minimum speed based upon his extensive investigation and measurements, the "yaw" marks, damage to the vehicles, and the experimental tests he conducted as a part of his investigation. He was not asked to draw a legal conclusion. See Schlichte v. Trucks, 265 N.W.2d 725, 729–30 (Iowa 1978).

In Bernal, 180 N.W.2d at 441, we wrote that if a witness did not know or consider the variables (e.g., kind of tread, inflation of tires, weight of vehicle) that "must be considered by a witness asked to make an exact calculation of speed from a mathematical formula," then the witness "must relate the details of his training, experience and experimentation which justify him in disregarding the factors ignored." See Henkel v. Heri, 274 N.W.2d 317, 323 (Iowa 1979).

Here Gould, under cross-examination, did not know the weight of the vehicles, the "delta angle of the curve," nor the depth of the tire tread. But he related the details of his training, experience, and experimentation. He fixed the point of impact and described the course of the vehicles before and after the collision without objection. This was not a case of a vehicle coming to a stop by skidding, a situation that lends itself to neat mathematical formulae. See Bernal, 180 N.W.2d at 440; Hedges v. Conder, 166 N.W.2d 844, 857 (Iowa 1969). We have not limited speed opinions to those instances. See Hardwick v. Bublitz, 254 Iowa 1253, 1261, 119 N.W.2d 886, 890 (1963) ("We are not to be understood as holding that a properly qualified expert witness may not in any case express an opinion on speed in the absence of skidmarks."). Given the physical evidence of speed in this case, we believe a "trained investigator, skilled and experienced in gathering and interpreting data, is better able to draw proper conclusions from such information than is a group of untrained jurors." Dougherty v. Boyken, 261 Iowa 602, 609, 155 N.W.2d 488, 492 (1968); see Annot., 29 A.L.R.3d 248, 254–65 (1970).

We hold reception of this evidence was within trial court's discretion, and trial court did not abuse that discretion in permitting Gould to express his opinion on the minimum speed of the Corvette. This determination of course applies to the opinion evidence of the other two officers, whose qualifications and knowledge were greater than that of Officer Gould.

## II. Lesser included offense.

■ Defendant asserts trial court erroneously refused to instruct the jury on involuntary manslaughter, as defined in Iowa Code subsection 707.5(2), as a lesser included offense of involuntary manslaughter as defined in subsection 707.5(1). The question is important because of the difference in penalties. Section 707.5 in part provides as follows:

707.5 Involuntary manslaughter.

1. A person commits a class "D" felony when the person unintentionally causes the death of another person by the commission of a public offense other than a forcible felony or escape.

2. A person commits an aggravated misdemeanor when the person unintentionally causes the death of another person by the commission of an act in a manner likely to cause death or serious injury.

We have examined various elements and aspects of the manslaughter crimes in *State v. Webb*, 313 N.W.2d 550, 552 (Iowa 1981); *State v. Conner*, 292 N.W.2d 682 (Iowa 1980); and *State v. Inger*, 292 N.W.2d 119, 122–24 (Iowa 1980).

*Inger*, 292 N.W.2d at 123–24, is dispositive of this issue. We there defined the word "act" in Iowa Code subsection 707.5(2) as an act that is *not* a public offense as defined in subsection 707.5(1). Therefore it would be impossible to commit involuntary manslaughter as defined by subsection 707.-5(1) (act must be a public offense) and at the same time commit involuntary manslaughter as defined by subsection 707.5(2) (act *not* a public offense). Subsection 707.-5(2) thus flunks the legal test as an included offense of the crime defined in subsection 707.5(1). *See Webb*, 313 N.W.2d at 552; *State v. Sangster*, 299 N.W.2d 661, 663–64 (Iowa 1980).

Trial court was right in refusing to instruct on the asserted lesser included offense.

### III. *Jury's request for instruction.*

■ After the jury began deliberating it requested a dictionary. When this request was refused, it requested a supplemental definition of "willful and wanton." Trial court sent the following communication to the jury:

Ladies and Gentlemen of the Jury:

I have received your request for a further definition of willful or wanton.

The definition of those words applicable to this case is contained in Instruction 6.

In instruction 6 trial court had provided the jury with the following definition of "willful and wanton":

This means a conscious and intentional driving which the driver knows, or should

know, creates an unreasonable risk of harm to others.

Trial court's communication was given to the jury in defendant's absence, but with the consent of defendant's counsel. Nonetheless, at defendant's request, the court repeated the communication in open court in defendant's presence and refused defendant's request to amplify the definition. This refusal is assigned as error by defendant.

At the outset we note that the court's communication was not an instruction under Iowa Rule of Criminal Procedure 18(7)(g). *State v. Dreessen*, 305 N.W.2d 438, 440 (Iowa 1981).

Iowa Rule of Criminal Procedure 18(7)(g) leaves it "in the discretion of the trial court" whether additional instructions will be given. In this case the definition of "willful and wanton" submitted to the jury had been approved by this court in *State v. Kernes*, 262 N.W.2d 602, 605 (Iowa 1978), an involuntary manslaughter prosecution. Trial court's definition was as clear as the several definitions defense counsel read from *Black's Law Dictionary* when making the in-chambers motion.

We find no abuse of trial court discretion in refusing to expand on its definition of "willful and wanton."

### IV. *Sentencing.*

Defendant contends trial court abused its discretion in sentencing him to a maximum five-year prison term "for the sole reason that the crime had involved loss of life." *See* Iowa Code §§ 707.5(1), 902.9(4). He argues that this was the only articulated reason for the sentence, and because manslaughter always involves loss of life, the court excluded from its consideration other factors that must enter the sentencing equation.

The Iowa Code section 901.3 presentence investigation report discloses that defendant's criminal record consists of five speeding tickets within a period exceeding eight years, and that he had been charged but not

yet convicted of OMVUI.[3] Defendant has approximately three years of college and was employed as a carpenter at a wage of $12 per hour. He had built his own home. He believed he was "railroaded" in this case and that he was innocent. The report recommended a five-year suspended sentence and probation.

At the sentencing hearing the State recommended "some form of incarceration."

Trial court made the following finding: [I]t is the judgment and sentence of this Court that the defendant ... shall be sentenced ... to the custody of the Director of Adult Corrections for a period of five years and for the costs of this action.

The reason for this sentence is that a person has lost their life as a result of this incident, it is the sentence permitted by law—authorized by law—statute, the Court determines that it is of the available alternatives the appropriate sentence.

We interfere in discretionary sentencing only if there has been an abuse of discretion. *State v. Carey*, 306 N.W.2d 740, 742 (Iowa 1981); *State v. Killpack*, 276 N.W.2d 368, 373 (Iowa 1979). Trial court, however, must exercise its discretion. We have said that the nature of the offense; the attendant circumstances; and the defendant's age, character, propensities, and chances of reform are "minimal essential factors" to be considered when exercising sentencing discretion. *State v. Hildebrand*, 280 N.W.2d 393, 396 (Iowa 1979); *see* Iowa Code § 907.5. The nature of the offense alone cannot be determinative of a discretionary sentence. *State v. McKeever*, 276 N.W.2d 385, 387 (Iowa 1979).

In this instance trial court failed to follow the *McKeever* rule. The court stated on the record and in the written judgment that the "reason" for this sentence was that "a person has lost their life as a result of this incident." Although in *McKeever* we found no error despite a similar statement by the sentencing judge, the record in that case disclosed the court "considered other relevant factors, such as the presentence report, lack of positive response by the defendant as a juvenile offender, rehabilitative effects of incarceration as opposed to other alternatives, and protection of the community, as well as the nature of the offense." *Id.* at 388. No such record appears in this proceeding. Here the record reflects the sentencing court exercised no discretion, stating its sentence in a manslaughter case was grounded on the loss of life, a necessary incident in every manslaughter prosecution.

We conclude this case must be remanded for resentencing on a record that reflects the sentencing court took into account the minimal essential factors that must be considered in the sentencing process. *Hildebrand*, 280 N.W.2d at 396. Our holding finds support in our reversals in *Hildebrand, id* at 394–97 (no deferred sentence in OMVUI conviction because an accident was involved), and *State v. Thompson*, 275 N.W.2d 370, 372 (Iowa 1979) (no probation or deferred sentence because charge was reduced by plea bargain). This does not mean that the nature of the offense, necessarily involving the loss of a life, should not be accorded substantial weight in the sentencing determination. Nor do we suggest what the sentence should be. *See Hildebrand*, 280 N.W.2d at 397. Costs are taxed to defendant.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING.

---

3. For a discussion of the limits on considering additional, unproven, and unprosecuted charges in sentencing, see *State v. Messer*, 306 N.W.2d 731, 732–33 (Iowa 1981).