STATE of Iowa, Appellee,

v.

Dennis WAGNER, Appellant.

No. 83–1273.

Supreme Court of Iowa.

Dec. 19, 1984.

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., and Lona Hansen, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, CARTER, and WOLLE, JJ.

CARTER, Justice.

Defendant, Dennis Wagner, appeals from conviction and sentence on three counts of involuntary manslaughter in violation of Iowa Code section 707.5(1) (1981). The charges against him grow out of an automobile accident which occurred when the motor vehicle defendant was operating left the roadway. Three passengers in the automobile were killed in the resulting crash. Evidence was offered at the trial that defendant had been consuming alcoholic beverages prior to the accident.

On appeal, defendant asserts that the trial court erred in admitting evidence of a chemical test obtained by an Iowa peace officer in the state of Wisconsin in apparent reliance on the implied consent procedures applicable under Iowa law. He also urges that the trial court erred in failing to exercise proper discretion in sentencing him to three concurrent prison sentences.

The evidence offered at the trial consisted of the testimony of one witness called by the State and a stipulation of the parties concerning the testimony of certain other witnesses. The evidence which was thus presented indicates that defendant and others had been drinking in a bar in Monona, Iowa, between 10 p.m. on September 23, 1982 and 1 a.m. on the following day. During this time, defendant consumed five or six alcoholic drinks described as "screwdrivers." At about 2 a.m., defendant and others journeyed from Monona to Prairie du Chien, Wisconsin in defendant's automobile. Someone other than the defendant was driving at the time.

In Prairie du Chien, defendant's companions ate at a restaurant, but the evidence indicates that defendant did not partake of any food. After his companions finished eating, they and defendant drove back across the bridge from Prairie du Chien, Wisconsin to Clayton County, Iowa. Defendant was driving at this time. Soon after reaching the Iowa side of the river, defendant lost control of his automobile causing it to leave the road. In the resulting collision, three passengers in defendant's automobile were killed.

The first peace officer on the scene was the sheriff of Clayton County, Iowa, who ascertained from questioning defendant that the latter had been driving the automobile involved in the fatal collision and had been drinking. The sheriff then obtained transportation for defendant to the hospital in Prairie du Chien, Wisconsin in order that defendant might receive treatment for his injuries. An Iowa state trooper with whom radio contact had been made was advised that a personal injury accident involving suspected drinking had occurred. Upon being advised where the driver had been taken, the trooper proceeded to the hospital in Wisconsin. He then proceeded to invoke the implied consent procedures applicable under 1982 Iowa Acts chapter 1167, section 15.

The defendant, upon request of the trooper, consented to the withdrawal of a specimen of his blood for purposes of chemical testing to determine the concentration of alcohol therein contained. Such test was performed at the written request of the trooper by medical technologists at the Wisconsin hospital. The results indicated that defendant's blood contained a concentration of .225% of alcohol by weight.

Prior to trial, the defendant moved to suppress the results of the chemical test of his blood on the grounds that an Iowa peace officer had no authority to invoke the implied consent procedures contained in Iowa law at a location outside of the boundaries of this state. This motion was denied by the trial court.

The case proceeded to trial before the court without a jury. The results of the challenged chemical test were admitted as evidence for the State. The trial court found the defendant was guilty of three counts of manslaughter and imposed three concurrent prison sentences.

I. *Authority of Iowa Peace Officer to Invoke Implied Consent Procedure for Chemical Testing Outside the State of Iowa.*

Defendant's first point on appeal is that an Iowa state trooper is without authority to invoke the implied consent procedures contained in Iowa Code chapter 321B at a location outside this state. From this premise, it is urged that evidence of the chemical test of defendant's blood which was obtained by means of chapter 321B procedures should have been suppressed.

In support of this contention, defendant urges that a peace officer, acting in his official capacity, may make an arrest only within the state from which his activity is derived. An arrest in a foreign state is unlawful, defendant claims, unless it can be justified as an arrest by a private person under the laws of the state where the arrest is made. We have recognized the principles upon which defendant's argument proceeds in *State v. O'Kelly*, 211 N.W.2d 589, 595 (Iowa 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974) and *Drake v. Keeling*, 230 Iowa 1038, 1046–47, 299 N.W. 919, 922 (1941).

■ The significance of the limitations which the law places on extraterritorial arrest powers is diminished in the present case because the propriety of the implied consent procedure does not turn on the state trooper's authority to arrest the defendant. The present charge is based on acts which occurred in September of 1982. As we observed in *State v. Brundt*, 356 N.W.2d 575, 576 (Iowa 1984), a statutory change which became effective July 1, 1982 obviated the requirement of an arrest in implied consent procedures growing out of personal injury accidents. That amendment, contained in 1982 Iowa Acts chapter 1167, section 15, governs the validity of the chemical test obtained in the present case.

Notwithstanding the lack of any requirement that there be an arrest, defendant urges that the same considerations which have produced limits on the power of extraterritorial arrest by Iowa peace officers should prompt us to recognize similar limits on their powers to invoke the chemical testing procedures of Iowa law in a foreign jurisdiction. We view the two situations as being markedly dissimilar. Placing a person under arrest in a particular state is an

act which significantly affects the sovereignty of that state vis-a-vis the status of the arrested person. The foreign state has a sovereignty interest in determining the circumstances under which the liberty of persons present in that state may be restricted. In contrast, the actions of the trooper which are challenged in the present case in no way affected defendant's status in the state of Wisconsin or otherwise abridged the sovereignty of that state.

In initiating the implied consent procedure, the trooper was merely acting as the statutory agent[1] of the Iowa Department of Transportation for purposes of administering the laws of this state pertaining to revocation in Iowa of an Iowa drivers license. Moreover, the acts upon which the revocation proceedings would be based occurred in the state of Iowa. We do not believe a state agency is precluded from taking action outside of its own state to carry out its statutory mission if such action does not intrude on the sovereignty of another state.

After the consent to chemical testing was obtained and the proper directions were given to the medical technicians at the Wisconsin hospital, the state trooper's acts may be properly characterized as the type of evidence gathering activities which do not depend on a grant of authority from a sovereign body. *See In re Mehrer*, 273 N.W.2d 194, 195–96 (S.D.1979) (court approves arrest of DWI defendant within officer's territorial jurisdiction based on evidence gathered by officer outside that jurisdiction).

For the reasons stated in the foregoing discussion, we conclude that there were no infirmities in the manner in which the implied consent procedures were carried out in the present case. The trial court did not err in denying defendant's motion to suppress the results of the chemical test.

II. *Sentencing Discretion.*

Defendant's final claim concerns the sentences which were imposed by the district court. He urges that the record reflects that the sole basis for imposing three concurrent prison sentences was the fact that three deaths had occurred. He directs our attention to *State v. Dvorsky*, 322 N.W.2d 62, 67 (Iowa 1982) where we held that, because death has occurred in every manslaughter prosecution, a sentence based on that single factor constitutes a refusal by the court to exercise its sentencing discretion.

In support of this contention, defendant relies on statements of the sentencing judge that the factors of deterrence, rehabilitation, and punishment were of questionable validity in the present case. If taken out of context, the court's remarks at the time of sentencing may indicate the same single factor determination which we condemned in *Dvorsky*. That view does not prevail, however, if the court's remarks are considered in their entirety. The sentencing judge considered all relevant sentencing factors, found some to be of questionable validity in the present case, and determined that a prison sentence was appropriate not only because three deaths had occurred, but, more importantly, because of the manner in which defendant had conducted himself in causing those consequences to occur.

We find no merit in defendant's claim that the trial court failed to exercise sentencing discretion. *See* and compare *State v. McKeever*, 276 N.W.2d 385, 388 (Iowa 1979). We have considered all issues presented and find no basis on which to reverse either the judgments of conviction or the imposition of sentence.

AFFIRMED.

1. Iowa Code § 321B.2 (1981).