REQUESTED BY: Senator Hefner District No. 19
Whether there are any constitutional problems with LB 872.
It is our opinion that the legislation is constitutional but no doubt will be subject to attacks regarding venue, jurisdiction, arrest and search and seizure issues.
Your inquiry is whether there are any constitutional or legal problems with the bill and if there are problems to make any helpful suggestions.
LB 872, relates to motor vehicle operation and the taking of chemical tests to determine the blood-alcohol level of drivers who have been taken across state lines for medical purposes. LB 872 also attempts to allow evidence (test results) received from out-of-state to be admissible in Nebraska.
In commenting upon the constitutionality of this legislation, it is our opinion that the legislation is constitutional but no doubt will be subject to attacks regarding venue, jurisdiction, arrest and search and seizure issues.
Case law following the implied consent statute, Neb.Rev.Stat. § 39-669.08, has held that in order to effectuate implied consent, the person from whom a blood sample is taken "must have been arrested or taken into custody before test is given." State v. Baker, 184 Neb. 724,171 N.W.2d 798 (1960). Thus, in order for the implied consent to remain in effect after leaving this state under current law, an arrest of the driver must be made so the person is in custody prior to taking the chemical tests.
For purposes of discussion, let us assume a person is in an accident in Nebraska and is taken to a hospital in Iowa before an arrest is made. Pursuant to Baker, supra, an arrest would have to be made in order for the implied consent law to be effective. A Nebraska law enforcement officer is not empowered to make an arrest in another state. The legislature cannot by statute confer on its state's officers any power to make an arrest in another state. 5 Am.Jur.2d Arrest § 50 p. 743. In other words, without an arrest before crossing over to another state, the implied consent law is not effective.
Notwithstanding, LB 872 at Section 9 of 39-669.08 obviates the requirement of an arrest in implied consent procedures growing out of a motor vehicle accident. It would be our suggestion that instead of using the phrase "motor vehicle accident" that it should read "the person has been involved in a motor vehicle accident or collision resulting in personal injury or death."
 It would be our suggestion that subsection 9 read as follows: Any person involved in a motor vehicle accident or collision resulting in personal injury or death shall be required to submit to a chemical test of his or her blood, breath, or urine by any law enforcement officer of this or any other state if the officer has reasonable grounds to believe that the person was driving or was in actual physical control of the motor vehicle on a public highway in the State while under the influence of alcoholic liquor or drugs at the time of the accident. A person involved in a motor vehicle accident subject to the implied consent law of this State should not be deemed to have withdrawn consent to submit to a chemical test of his or her blood, breath or urine by reason of leaving the State. If the person leaves the State for any reason following an accident, he or she shall remain subject to subsection (4) of this Section and Section 39-669.16 upon return.
Leaving in the language on line 6 "refuses a test under this section and" only adds another element to be proved and is not necessary and therefore we would suggest that it be deleted.
LB 872 takes into consideration the circumstances wherein law enforcement officers attending to emergency duties at a scene of an accident may not have time to place a driver of one of the motor vehicles under arrest and demand a chemical test.
An example of how the statutory procedure in LB 872 may work is illustrated in the case of State v. Wagner,359 N.W.2d 487 (Iowa 1984).
The Iowa Supreme Court in State v. Wagner, supra, found that a State agency is not precluded from taking action outside of its own state to carry out its statutory mission if such action does not intrude upon the sovereignty of another state. The Court also stated that in a prosecution for involuntary manslaughter based on traffic related fatalities, the trial court did not err in denying defendant's motion to suppress results of the chemical test even though a Iowa peace officer invoked the complied consent procedure for chemical testing while defendant was being treated for injuries in a Wisconsin hospital, since in initiating the implied consent procedure, the trooper was merely acting as the agent of the Iowa Department of Transportation for purposes of administering the laws of Iowa pertaining to revocation of an Iowa's drivers license in an automobile accident upon which the revocation proceeding would be based occurred in Iowa. The defendant in this case urged that a peace officer, acting in his official capacity, may make an arrest only within the State from which his activity is derived, as an arrest in a foreign state is unlawful, unless it can be justified as an arrest by a private person under the laws of the State where the arrest is made. The Court stated that the significance of the limitations which the law places on extra territorial arrest powers is diminished in the present case because the propriety of the implied consent procedure does not turn on the State troopers authority to arrest the defendant. The present charges were based on acts which occurred in September of 1982. . . A statutory change which became effective July 1, 1982 obviated the requirement of an arrest in an implied consent proceeding growing out of a personal injury accident. The court also stated that the acts upon which the revocation proceedings would be based occurred in the State of Iowa.
The expected constitutional challenge relating to LB 872 is whether the acquisition of the blood test results by the prosecution without a warrant violates the Fourth Amendment. Under LB 872, the blood tests are taken for medical purposes.
The Michigan Supreme Court faced this Fourth Amendment challenge in the case of People v. Perlos, 462 N.W.2d 310
(Mich. 1990). In that case, the Michigan Supreme Court in held that the acquisition of blood test results by prosecution without warrant did not violate the fourth amendment or state constitution. The Court stated "the search" "performed here, i.e., the removal of the blood sample from defendant, was done strictly for purposes of medical treatment and not at the direction of the police, the prosecutor or state agents. Thus, the actual removal of the blood sample is not a search protected by the Fourth Amendment, since state action is not involved." The Court next inquired as to the acquisition of the blood test results. The inquiry was whether the State's request and acquisition of blood test results without a search warrant infringed on defendant's Fourth Amendment privacy interests. The Court stated the People of the State of Michigan, through action of the legislature, has indicated that they do not recognize a reasonable expectation of privacy in the results of blood alcohol test taken from the driver of a car in an accident, where the test was administered by hospital staff pursuant to medical treatment or diagnosis.
Next, in 39-669.11(2) the problem area with (2) is the language as follows:
 To be considered valid tests under Section 39-669.08
shall be performed according to methods approved by the Department of Health. . .
The methods for obtaining chemical samples in another State may not be the same as of the Department of Health and therefore this would cause an evidence admissibility problem. It would be suggested that the language be changed to the effect, such as, according to the methods approved by the Department of Health of this State or the State wherein the blood sample was taken.
I do not see a problem with Section 39-669.11(3) dealing with relevant evidence.
Subsection (2) of 39-669.12 deals with the situation where a law enforcement officer from another State requests that a physician, etc., in this State to withdraw blood for purposes of a chemical test to determine the alcoholic content. This section goes on to state that the physician will not be civilly or criminally liable if the "asking" State has a similar civil or criminal liability act. Unless there is some form of an interstate compact agreement, a practical problem might be that the officer would have to have some form of a "certificate" that would have to be shown to the doctor before he would perform the test. It should also be noted that although the physician may be asked to obtain the test, it should remain clear that the out-of-state officer would have no actual authority to force the Nebraska physician to withdraw the blood.
Subsection (4) of 39-669.12 consists of three subsections (1), (2) and (3) seem to be on solid ground.
Section 60-4,164(6), we would suggest that the language commencing on line 20 should read "if the person leaves the State for any reason following an accident, he or she shall remain subject to this Section upon return." Once again we do not feel that it is necessary to have the element that he or she refused a test before leaving the State.
In addition to the new provisions of the proposed legislation, it would be our recommendation that a compact be entered into between Nebraska and other contiguous states, authorizing contiguous state law enforcement officers to arrest based upon Nebraska law enforcement officers probable cause and giving those out-of-state officers the authority to invoke Nebraska's implied consent law. In the alternative, that Nebraska officers be given extra territorial authority to arrest from the contiguous states.
Very truly yours,
DON STENBERG Attorney General
Kenneth W. Payne Assistant Attorney General
Approved by:
______________________ Don Stenberg Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature 34-705-4