# IN THE COURT OF APPEALS OF IOWA

No. 14-0260
Filed June 24, 2015

**STATE OF IOWA,**
          Plaintiff-Appellee,

**vs.**

**MCCALL D. ABRAMS,**
          Defendant-Appellant.
_____

          Appeal from the Iowa District Court for Scott County, Mark D. Cleve, Judge.


          Defendant appeals his convictions and sentences for possession of a controlled substance with intent to deliver, possession of a simulated controlled substance with intent to deliver, and two counts of failure to affix a drug tax stamp.  **AFFIRMED.**


          Mark C. Smith, State Appellate Defender, Patricia Reynolds, Assistant Appellate Defender, and Austin Mouw, Student Legal Intern, for appellant.

          Thomas J. Miller, Attorney General, Alexandra Link, Assistant Attorney General, Ryan Ashley, Student Legal Intern, Michael J. Walton, County Attorney, and Kelly G. Cunningham, Assistant County Attorney, for appellee.


          Considered by Vaitheswaran, P.J., Doyle, J., and Miller, S.J.*

          *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MILLER, S.J.**

Defendant McCall Abrams appeals his convictions and sentences for possession of a controlled substance with intent to deliver, possession of a simulated controlled substance with intent to deliver, and two counts of failure to affix a drug tax stamp. Abrams has not shown he received ineffective assistance because defense counsel did not file a motion to suppress claiming another person's consent to search a vehicle was not voluntary. Nor does the record support Abrams's assertion the district court abused its sentencing discretion by relying on a single factor in imposing sentence. We affirm Abrams's convictions and sentences.

### I.    Background Facts & Proceedings

On May 8, 2013, officers from the Rock Island, Illinois, police department had a vehicle driven by Tyra Reaves under surveillance as part of a narcotics investigation. The officers saw McCall Abrams (Abrams) and his cousin, Darious Abrams (Darious), enter the vehicle. Reaves pulled away from the curb without signaling and failed to completely stop at a stop sign. The officers stopped the vehicle based on the traffic violations. Reaves consented to a search of the vehicle. The officers found $1300 in Abrams's shoe. Abrams, Darious, and Reaves were taken to the Rock Island Police Station.[1]

Abrams signed a waiver of his *Miranda* rights and agreed to talk to officers. He stated he came to the Quad Cities area for the purpose of selling

---

[1]    The minutes of evidence show the officers found a baggie of crack cocaine in Reaves's purse, two baggies consistent with the packaging of illegal narcotics in the vehicle, and a white powdery substance on the floor of the vehicle. Based on the discovery of these items Abrams, Darious, and Reaves were taken to the police station.

narcotics. Abrams stated he travelled to Chicago about once a month to purchase crack cocaine to sell in the Quad Cities. He stated he was living in an apartment in Davenport, Iowa, with his girlfriend, Reaves. He stated he kept crack cocaine at Reaves's apartment.

Reaves signed a written statement consenting to a search of her apartment. Officers from Illinois and Iowa worked together to search the apartment. Inside a cereal box in the kitchen the officers found eleven baggies of crack cocaine, with a total combined weight of 31.49 grams. They also found a pill bottle containing fifty-eight tablets of simulated ecstasy. The officers additionally found a digital scale that had crack cocaine residue on it. Documents addressed to Abrams were found in the apartment.

In Iowa, Abrams was charged with possession of a controlled substance (crack cocaine) with intent to deliver, in violation of Iowa Code section 124.401(1)(b)(3) (2013); possession of a controlled substance (simulated ecstasy) with intent to deliver, in violation of section 124.401(1)(c)(8); two counts of failure to affix a drug tax stamp, in violation of section 453B.12; and conspiracy to commit a non-forcible felony, in violation of section 706.1(1).

The case proceeded to a jury trial commencing on January 13, 2014. Officers testified concerning Abrams's statements and the items found in the apartment. Abrams testified and denied being in a relationship with Reaves or living in the apartment. In rebuttal an officer testified that during the interview at the Rock Island Police Station Abrams described Reaves as his girlfriend. The jury found Abrams guilty of the charges against him.

The sentencing hearing was held on February 20, 2014. The court merged the conviction for conspiracy into the drug possession charges. Abrams was sentenced to twenty-five years on the charge of possession of a controlled substance (crack cocaine) with intent to deliver, ten years on the charge of possession of a controlled substance (simulated ecstasy) with intent to deliver, and five years on each of the two charges of failure to affix a drug tax stamp, all to be served concurrently. The court also waived any mandatory minimum sentences for the drug possession charges. Abrams appeals his convictions and sentences.

## II.    Ineffective Assistance

Abrams claims he received ineffective assistance because defense counsel did not file a motion to suppress claiming Reaves's consent to search the vehicle was not voluntary.[2] He asserts Reaves would not have felt she was free to refuse to consent to the search. Abrams contends that all of the evidence resulting from the search of the vehicle, his statements at the police station, and evidence discovered at the apartment should have been suppressed. We review a claim of ineffective assistance of counsel de novo. *State v. Wills*, 696 N.W.2d 20, 22 (Iowa 2005).

---

[2]    Abrams cites to the Fourth Amendment of the Federal Constitution and article I, section 8 of the Iowa Constitution. He does not argue, however, the two provisions should be interpreted differently. Consequently, we do not separately consider Abrams's claims under the Iowa Constitution. *See State v. Carter*, 696 N.W.2d 31, 37 (Iowa 2005) (noting that where a party had not asserted a basis to distinguish the protections afforded by the Iowa Constitution and the Federal Constitution, "our analysis applies equally to both the state and federal grounds").

The State argues Abrams does not have standing to assert Reaves's consent was not voluntary. The State asserts Abrams did not have a legitimate expectation of privacy in Reaves's vehicle and so cannot claim his Fourth Amendment rights were violated by a search of the vehicle.

Abrams relies upon *State v. Osborn*, 200 N.W.2d 798, 804 (Iowa 1972), which states, "To be charged with an offense of possession gives rise to a claim of an invasion of privacy, and standing to question the legality of the search and seizure becomes automatic." This statement is premised upon the United States Supreme Court case of *Jones v. United States*, 362 U.S. 257, 260-61, 80 S. Ct. 725, 730-31, 4 L. Ed. 2d 697, 702-03 (1960). The automatic standing rule espoused in *Jones*, however, was overruled by the United States Supreme Court in *United States v. Salvucci*, 448 U.S. 83, 95, 100 S. Ct. 2547, 2554-55, 65 L. Ed. 2d 619, 630 (1980). Although *Osborn* has not been specifically overruled, we stated in *State v. Hungerford*, 311 N.W.2d 699, 701 (Iowa Ct. App. 1981), that the automatic standing rule was no longer applicable due to the Supreme Court's decision in *Salvucci*. We conclude Abrams cannot rely upon the automatic standing rule to provide him with standing to challenge the search of the vehicle. *See Hungerford*, 311 N.W.2d at 701.

A person's Fourth Amendment rights are personal and may not be vicariously asserted. *State v. Lowe*, 812 N.W.2d 554, 566 (Iowa 2012). A person, however, is not required to make an independent showing of standing. *Id.* at 567. A challenge to a search based on the Fourth Amendment "will stand or fall on a defendant's ability to show a substantive violation which in turn is

based on a showing of a legitimate expectation of privacy in the particular area searched or the particular objects seized." *State v. Henderson*, 313 N.W.2d 564, 565 (Iowa 1981). "The party challenging a search must establish that his or her *own* Fourth Amendment rights have been violated, not the rights of someone else." *State v. Ortiz*, 618 N.W.2d 556, 559 (Iowa 2000).

We engage in a two-step analysis to determine whether there has been a violation of a person's Fourth Amendment rights. *State v. Naujoks*, 637 N.W.2d 101, 106 (Iowa 2001). First, we consider whether the person has a legitimate expectation of privacy in the area that was searched. *Id.* A person must have both a subjective and objective expectation of privacy in the area. *Id.* "We determine whether a person has a legitimate expectation of privacy on a case-by-case basis." *Id.* Second, we determine whether the State has unreasonably invaded the person's protected privacy interest. *Id.*

In *Rakas v. Illinois*, the United States Supreme Court considered whether passengers had a legitimate expectation of privacy in a vehicle that was searched by officers. 439 U.S. 128, 130, 99 S. Ct. 421, 432, 58 L. Ed. 2d 387, 392 (1978). The court noted the passengers "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." *Id.* at 148, 99 S. Ct. at 433, 58 L. Ed. 2d at 404. The court concluded the passengers did not have a reasonable expectation of privacy in the portions of the vehicle that were searched. *Id.* at 149, 99 S. Ct. at 433, 58 L. Ed. 2d at 405.

The Iowa Supreme Court followed *Rakas* in *State v. Halliburton*, 539 N.W.2d 339, 342 (Iowa 1995), where a defendant sought to suppress evidence

found in his mother's vehicle, in which he had been a passenger. The court determined the defendant did not have a legitimate expectation of privacy in the vehicle. *Halliburton*, 539 N.W.2d at 343. The court stated, "Halliburton was merely a recent passenger in his mother's vehicle." *Id.* at 342. He was neither the driver nor the owner of the vehicle. *Id.* The court determined the district court had properly denied the defendant's motion to suppress the evidence found in a search of the vehicle.[3] *Id.* at 343.

We conclude Abrams did not have a legitimate expectation of privacy in the vehicle searched by the officers. Abrams was not the driver of the vehicle. He was not the owner of the vehicle. The evidence shows he was merely a recent passenger. Because Abrams did not have a legitimate expectation of privacy in the vehicle, he cannot show his Fourth Amendment rights were violated by a search of the vehicle. *See Lowe*, 812 N.W.2d at 567. Thus, even if defense counsel had filed a motion to suppress claiming Reaves's consent to search the vehicle was not voluntary, the motion would have been denied on the ground Abrams did not have a legitimate expectation of privacy in the vehicle. Abrams has not shown he received ineffective assistance of counsel.

---

[3] We note the issue raised on appeal concerns the search of a vehicle, not the stop of the vehicle. The rightful passengers of a vehicle "have a legitimate expectation of privacy which is invaded when the vehicle is stopped by the government." *State v. Eis*, 348 N.W.2d 224, 226 (Iowa 1984). "The vehicle occupants have a protected privacy interest in freedom of movement that is invaded when the vehicle is stopped." *Id.* Therefore, a passenger has standing to challenge the constitutionality of a traffic stop. *Id.* at 227.

### III.    Sentencing

Abrams asserts the district court abused its sentencing discretion.   He contends the court relied upon a single factor, the amount of crack cocaine he possessed with intent to deliver, in sentencing him to imprisonment, and thus abused its discretion by imposing imprisonment instead of probation.   Our scope of review is for correction of errors at law.   Iowa R. App. P. 6.907.   Our standard of review is for an abuse of sentencing discretion.[4]   *State v. Barnes*, 791 N.W.2d 817, 827 (Iowa 2010); *State v. Laffey*, 600 N.W.2d 57, 62 (Iowa 1999).

A district court's sentencing decision is cloaked with a strong presumption in its favor and will not be upset on appeal unless the defendant demonstrates an abuse of discretion or a defect in sentencing procedure such as consideration of impermissible factors.   *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000). An abuse of sentencing discretion will not be found unless the defendant shows that it was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable.   *State v. Pappas*, 337 N.W.2d 490, 493 (Iowa 1983).

"In exercising its discretion, 'the district court is to weigh all pertinent matters in determining a proper sentence including the nature of the offense, the attending circumstances, the defendant's age, character, and propensities or chances for reform.'"   *State v. Loyd*, 530 N.W.2d 708, 713 (Iowa 1995) (quoting *State v. Johnson*, 513 N.W.2d 717, 719 (Iowa 1994)).   These are the minimal essential factors to be considered.   *State v. Dvorsky*, 322 N.W.2d 62, 67 (Iowa

---

[4]  An abuse of discretion is simply a standard of review that is encompassed within, or a subcategory of, a correction of errors at law scope of review.   *See State v. Valin*, 724 N.W.2d 440, 444 (Iowa 2006) (stating that "any abuse of discretion necessarily results in a legal error").

1982). The court must state on the record its reason for the sentence it imposes. Iowa R. Crim. P. 2.23(3)(d). The reasons need not be detailed, but at least a cursory explanation must be provided so an appellate court can review the district court's exercise of discretion. *State v. Jacobs*, 607 N.W.2d 679, 690 (Iowa 2000). "A statement may be sufficient, even if terse and succinct, so long as the brevity of the court's statement does not prevent review of the exercise of the trial court's sentencing discretion." *State v. Johnson*, 445 N.W.2d 337, 343 (Iowa 1989).

At sentencing Abrams requested a suspended sentence and probation, emphasizing a "relatively little criminal history."[5] The State recommended imprisonment, with sentences to run concurrently, and waiver of the mandatory minimum sentences that would otherwise be required under Iowa Code section 124.413 (2013) on the two possession-with-intent-to-deliver convictions. The State emphasized the "extremely large quantity of crack cocaine" involved in one of the convictions[6] and the admissions Abrams had made to police officers that he and associates had for a period of months frequently brought several ounces of crack cocaine to the Quad Cities and distributed it there. The Iowa Department of Correctional Services recommended imprisonment, based on Abrams's "history with illegal drugs" and "the nature of this case."

---

[5] The presentence investigation report shows only a conviction for domestic battery, for which Abrams received probation but was subsequently required to serve jail time, and a conviction for possession with intent to deliver a narcotic, the latter conviction arising out of the events of May 8, 2013, in Rock Island, Illinois, mentioned early in this opinion.

[6] The evidence showed that Abrams had possessed thirty or more grams, while Iowa Code section 124.401(1)(b)(3) made possession of more than ten grams but not more than fifty grams a class "B" felony.

The court sentenced Abrams to concurrent terms of imprisonment, without any mandatory minimum sentences or fines. In doing so the court stated it had "given serious consideration to the defendant's request for probation," but that "given the nature and circumstances of these offenses and the amount [of crack cocaine] involved in Count 1 and the other information that's contained in the presentence investigation report," a suspended sentence was not appropriate.

In addition to the two previous convictions, the presentence investigation report showed that Abrams had been twenty-two years of age at the time he committed the crimes in this case and was twenty-three at the time of sentencing; he had had a serious alcohol use and abuse problem since age eighteen; he had been using illegal drugs since age fourteen, had a serious drug abuse problem, and needed substance abuse treatment; and the only job he had ever held had been for one year in 2011-2012.

The court also expressly considered "the nature and circumstances of [the multiple] offenses." In addition it considered, from its reliance in part on the presentence investigation report, Abrams's age; his character, propensities, and chances for reform, as suggested by his lengthy history of illegal use and abuse of alcohol and illegal drugs; and the recommendation for imprisonment made by the Iowa Department of Correctional Services.

We conclude that in determining an appropriate sentence the district court did not, as asserted by Abrams, consider and rely only on the amount of crack cocaine involved in Count 1. Instead, it relied on numerous appropriate factors. The court's statement concerning the reasons for its sentence, while not detailed,

is sufficient for us to determine that it exercised its discretion and is sufficient for us to review the exercise of that discretion. We find no abuse of discretion.

### IV. Conclusion and Disposition

Abrams's claim that defense counsel rendered ineffective assistance is without merit. In addition, the district court did not rely on a single factor in imposing sentence, and thus did not abuse its sentencing discretion.

We affirm Abrams's convictions and sentences.

**AFFIRMED.**