# IN THE COURT OF APPEALS OF IOWA

No. 15-1041
Filed February 24, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ZACKERY KOLTES-BODLAK,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Patrick H. Tott, Judge.

        Zackery Koltes-Bodlak appeals from the district court's revocation of his probation, and entry of judgment and subsequent imposition of a prison sentence which it had previously deferred. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

        Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Zackery Koltes-Bodlak (Bodlak) appeals from the district court's revocation of his probation, and entry of judgment and subsequent imposition of a prison sentence which it had previously deferred, following his guilty plea to second-degree criminal mischief. On appeal, he contends the district court abused its discretion in imposing a prison sentence, after it previously deferred judgment, without giving sufficient consideration to his efforts to comply with the conditions of probation. Finding no abuse of discretion by the district court, we affirm.

### I. *Background Facts and Proceedings.*

On August 8, 2012, seventeen-year-old high school student Bodlak was riding in a vehicle with others around Sioux City and randomly shooting at car windows with his BB gun. Windows on some six or seven vehicles were broken. In February 2013, Bodlak was charged with criminal mischief in the second degree, a class "D" felony, in violation of Iowa Code sections 716.1 and 716.4 (2011). In August 2013, Bodlak pled guilty to the charge. The district court accepted Bodlak's plea and granted him a deferred sentence and judgment pursuant to Iowa Code section 907.3(1). The court placed Bodlak on probation for four years, subject to certain rules and conditions. He was ordered to pay $1672.23 in victim restitution and was assessed various penalties and surcharges.

Bodlak's probation had a rocky start. In December 2013 and January 2014, Bodlak's probation officer filed reports of violations citing Bodlak with numerous violations, including failure to appear for appointments or call to

reschedule, ongoing drug use, failure to attend a required workshop, and lack of school attendance. The State then filed an application for revocation of probation. Supplemental violation reports were filed citing Bodlak's continued drug use.

In an agreement on the application for revocation, Bodlak admitted violating various conditions of his probation "by continuing to use marijuana, missing probation appointments, and failing to follow the recommendation of his court-ordered treatment." The agreement provided Bodlak would remain on probation and his conditions of probation would be changed to include that he successfully complete Project Phoenix, aftercare, drug court, and, if so ordered by his probation officer, the Residential Treatment Facility (RTF) program. The district court accepted the agreement.

In April 2014, the court approved Bodlak's entry into Project Phoenix's initial inpatient-treatment program. He successfully completed the inpatient component of that program in June 2014 and was released from custody. Unfortunately, things went downhill from there.

Bodlak was a "no call no show" for several scheduled appointments with his probation officer. In September 2014, he was arrested for third-degree criminal mischief. Thereafter, an application for review of his drug-court placement was filed with the court, requesting the court review the matter for possible sanctions because Bodlak had been arrested, had failed to attend or provide proof he had attended recovery meetings as he had been directed, and had failed to complete or provide verification he had completed required hours of community service work. At the drug-court status hearing held at the beginning

of October 2014, the court personally addressed Bodlak, reviewed the court file, and subsequently entered its order, stating it told Bodlak he was doing great with sobriety and treatment and to keep it up but he needed to do what was required on probation, not lie, and discuss the personal issues that bothered him with his counselor.

Two weeks later, Bodlak's urine tested positive for THC. He then admitted to his probation officer he had used marijuana at a friend's house either that day or the day before. An application for a drug-court-custody order was then filed, and Bodlak was ordered into custody for seventy-two hours.

In January 2015, another application for review of drug-court placement was filed with the court, stating Bodlak was not complying with the drug court's recommendations and had failed to complete or provide proof he had completed "the recommended community service hours." At the January 2015 status hearing, the court again addressed Bodlak personally, and it subsequently entered its order, stating Bodlak "must get going on his service hours" and directing Bodlak to "make the necessary steps to find a place that will do community service and then go." The order also stated "that failure to do so is likely to result in RTF."

About two months later, in March 2015, another application for a drug-court-custody order was filed. The application explained that two of Bodlak's urinalyses had been positive for marijuana, thereby violating the rules of his probation and of the drug court, and that Bodlak had failed to attend substance-abuse treatment. He was again ordered into custody for seventy-two hours.

Thereafter, the State filed another application for revocation of probation, along with the violation report enumerating Bodlak's numerous violations of the probation rules. Bodlak was a "no call no show" for a scheduled appointment with his probation officer. He was caught bringing marijuana into the RTF and subsequently arrested for possession of marijuana. He received seven major-violation reports during his twenty-three-day stint in RTF. He walked out of the RTF on March 13, 2015. He failed to make any payments towards the costs and restitution in his case. He admitted to his drug-court panel "that he had used marijuana while in RTF and that he did not think or care about what would happen if he were caught." In the report, Bodlak's probation officer commented, Bodlak "clearly has no intention on stopping his illegal behavior or complying with this probation."

The district court heard the matter in May 2015, and Bodlak and his probation officer testified. After hearing both counsels' arguments, the court asked Bodlak, much like an allocution, if he had anything, "anything at all," to say to the court. Bodlak responded:

> I was wondering—I don't know—[my probation officer] said I was doing—I was doing so terrible at RTF and it didn't really help that, you know, my grandma passed away. That was really hard. My mom called me when I was at work, and I couldn't handle it. That one was really hard. And then, after that, pretty much everything in RTF just spiraled down and then—so now that it's not so hard on me—it's still hard, but it's—it's a little bit farther behind me than it was before. I can make it through RTF, and I know I can.

At the conclusion of the hearing, the court found:

> In regards to the application for revocation of probation, the court's going to find that the State has provided adequate evidence to show that [Bodlak] has violated the terms of his probation and that

the evidence would support violations of rules 1, 5, 6, 8, drug-court rule 4, 6, 12, and 14, and special rules of probation 1, 4, 7, and 8.

Zackery, the tough thing for me is you have all the chances that would generally warrant as many chances as possible; you're young, don't have an extensive criminal history. But at the same time, every available service that's available for a defendant has pretty much been provided to you.

You know, [the prosecutor] is right when he says that the original sentence you received is about the best anyone could hope for with a deferred judgment, . . . a period of probation with a civil penalty. And it's not common for people in your circumstance to be given that opportunity because if you are . . . successful, it keeps a felony conviction off your record . . . and allows you to proceed as though nothing ever happened . . . . But I guess there's two things here that are very troubling for me. One is what I've already said. You've been given an opportunity at basically every potential area of rehabilitation from straight probation to Project Phoenix, then to the RTF. And there really isn't another step between there and the next one.

But equally—and maybe even more significantly—was that you had prior probation violations in early 2014. And it appears to me that you, again, were given the best possible results. Your deferred judgment wasn't revoked at that time. It could have been. Then you were given the opportunity at Project Phoenix, which you did have . . . some progress there, at least on the in-patient portion of it, but then once you got to the out-patient portion of it, maybe not so well, which then triggered RTF. And, you know, you . . . basically have an average of one violation every three days while at the RTF. And probably the most telling of all would [be] what you told the drug-court people on March 19th—which is the last thing in [the probation officer's] report—that you just didn't care what happened when you . . . tested positive for marijuana.

Now, with all that background—while everything inside of me tells me to give you another chance at RTF as a human being, . . . I just don't see in the record where there's any reasonable likelihood of success if I do that again. RTF is a very restrictive program and it's not something—It's not regular probation. It's very strict.

. . . .

And there's really no leeway. And with the history we have, I think we're just delaying the inevitable. And if I put you in jail and make you sit there for two or three months waiting for a bed just to get there to probably violate again, and we'll be right back here this fall doing this all over again. And in the meantime, you've wasted three months of your life or four months of your life. Which to be honest with you, if I impose a sentence, you may be about ready for parole with that amount of time with the way the system works.

Having said that, I don't know if I've made any sense when I'm talking, but it's going to be the decision of the court that you have violated the terms of your probation. That I'm going to revoke your probation. Along with that, that your terms of your deferred judgment are going to be revoked as well, and conviction will be entered for the original charge, criminal mischief in the second degree. I'm going to impose the original five-year indeterminate sentence, and mittimus will be forthwith.

. . . .

[Y]ou're a young man. You've still got your whole life in front of you, but you've got to get these issues that are out there tackled. This can be a one-time type of deal and/or it can snowball, or you can be in front of a judge the rest of your life. You don't need that. We don't want that, but you've got to get your substance abuse under control, and . . . your other issues you've got to get under control to deal with. And I don't think there's any reasonable likelihood of that happening if I keep you on probation at this time in light of the history that's in front of me here. So that will be the sentence of the court.

Thereafter, the district court entered its ruling terminating Bodlak's probation, entering judgment and imposing the sentence it had previously deferred; specifically, the court ordered Bodlak be confined in the custody of the Director of the Iowa Department of Corrections for an indeterminate term not to exceed five years.

Bodlak now appeals.

### II. Sentencing.

Generally, courts may consider a variety of factors to justify the imposition of a sentence, including rehabilitation of the defendant and protection of the community from further offenses by the defendant and others. *See* Iowa Code § 901.5. "[T]he nature of the offense; the attendant circumstances; and the defendant's age, character, propensities, and chances of reform are 'minimal essential factors' to be considered when exercising sentencing discretion." *State v. Dvorsky*, 322 N.W.2d 62, 67 (Iowa 1982) (citations omitted). "[T]he decision of

the district court to impose a particular sentence within the statutory limits is cloaked with a strong presumption in its favor," and it will only be overturned if the court considered inappropriate matters or abused its discretion, which only occurs when "the decision was exercised on grounds or for reasons that were clearly untenable or unreasonable." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

### III. Discussion.

Bodlak argues the district court abused its discretion because it "did not adequately consider [Bodlak's] chances at reform and rehabilitation as a very young man." He contends the conditions of his probation were too strict and "set him up to fail." He points us to the positive efforts he did make: "He was close to receiving his high school diploma, he was holding down a full time job, and he had completed in patient drug treatment." He argues the court should have taken into account what he has accomplished for such a young man with so many obligations and should have allowed him to continue his rehabilitation.

Facing a felony conviction, this young man received the most favorable disposition—a deferred judgment. But within months of being granted a deferred judgment, Bodlak repeatedly violated the conditions of his probation. After a number of reports of violation and an application to revoke his probation were filed, Bodlak was given another chance by the court. The drug court later referred Bodlak to the district court for possible sanctioning for probation violations, but Bodlak was given another chance and received only a reprimand. He was later ordered to seventy-two hours of custody for probation and drug court violations. He was once again referred by the drug court to the district

court for possible sanctioning for probation and drug-court violations, and he was again reprimanded and also warned he may be ordered to the RTF. He was then again ordered to seventy-two hours custody for probation and drug court violations after using marijuana in the RTF. While on probation, he was arrested for criminal mischief and for possession of marijuana.

The record, spanning over a year, is replete with repeated probation violations. Bodlak now says, "I can make it through RTF, and I know I can." These words ring hollow, for we are reminded of the old proverb: "Actions speak louder than words." Without minimizing Bodlak's accomplishments, they pale in comparison to his abysmal probation record. It is truly sad that this average high school student, who associated with the wrong crowd, is now saddled with a felony conviction for the rest of his life, but he is the one who chose to blow every opportunity to keep his record clean.

Upon our review of the record as a whole, we find no abuse of discretion. We find the district court's sentence was within statutory limits and was neither unreasonable nor based on insufficient or untenable grounds. The court properly considered and weighed numerous appropriate factors in arriving at a sentence, and it clearly stated valid reasons for the sentence imposed.

### IV. Conclusion.

Because the court's sentencing decision was well within its discretion, we will not disturb it on appeal. Accordingly, we affirm Bodlak's conviction and sentence.

**AFFIRMED.**