**STATE of Iowa, Appellee,**

v.

**Patrick Ray LLOYD, Appellant.**

No. 93–310.

Supreme Court of Iowa.

March 23, 1994.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas G. Fisher, Jr., Asst. Atty. Gen., Thomas S. Mullin, County Atty., and John Nelson and Teri L. Ladwig, Asst. County Attys., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and NEUMAN, JJ.

McGIVERIN, Chief Justice.

The practical question here is whether a motorist can escape the authority of a police officer of another state by crossing into Iowa even though the officer observes the motorist in both states in the continuing commission of a motor vehicle equipment violation.

After being stopped, the motorist was ultimately charged and convicted in Iowa of operating while intoxicated. We affirm.

I. *Background facts and proceedings.* After dark on the evening of November 27, 1991, officer Tim Sandage of the police department of North Sioux City, South Dakota, attempted by flashing his red overhead lights to stop defendant Patrick Lloyd in South Dakota because Lloyd's truck lacked lighted taillights. Lloyd failed to stop and crossed

the state line into Iowa. Officer Sandage followed Lloyd and Lloyd finally pulled over in Sioux City, Iowa. Officer Sandage had the defendant get out of his truck.

Officer Sandage gave defendant a warning ticket for driving without his taillights and, after running a check on defendant's South Dakota vehicle registration, also cited Lloyd for an expired license plate. Both offenses were low-class misdemeanors under South Dakota law.

Lloyd looked drunk. Therefore, officer Sandage called a Sioux City, Iowa, police officer to the scene. After conducting field sobriety tests, the Iowa officer charged Lloyd with operating while intoxicated (OWI) in violation of Iowa Code section 321J.2 (1991). An intoxilyzer test revealed that Lloyd's blood alcohol content was .189.

Before trial, Lloyd filed a motion to suppress evidence of intoxication obtained after the stop and to dismiss the trial information. Lloyd contended that under Iowa Code section 806.1 of the Uniform Fresh Pursuit Law (chapter 806), an out-of-state police officer is only authorized to pursue a fleeing felon, not a misdemeanant, into Iowa. He therefore argued that his detention in Iowa was invalid and that the evidence of intoxication thereby obtained should have been suppressed.

The district court rejected this argument. It observed that section 806.3 of the Act provides that section 806.1 shall not be construed so as to make unlawful any arrest in Iowa which would otherwise be lawful. Relying on that provision, the court further observed that Iowa Code section 804.9(1) authorizes arrests by private persons for public offenses committed in the person's presence. The court therefore reasoned that officer Sandage as a private citizen lawfully detained Lloyd under section 804.9. The court overruled Lloyd's motion.

After a bench trial in which the court admitted the evidence of defendant's intoxi-cation and driving, defendant was convicted and sentenced for OWI, as charged.

Lloyd appeals. He contends that officer Sandage had no authority as a South Dakota officer to flag him down and detain him in Iowa. Therefore, he argues that the evidence of his intoxication, which was obtained as a result of officer Sandage's detention, should have been excluded.[1]

II. *Validity of detention.* Lloyd premises his argument for exclusion of the intoxication evidence on two theories. He first argues that officer Sandage's actions merely amounted to a citation or an illegal investigatory stop, not an arrest. Because private citizens have no authority to issue citations, he argues, the stop was invalid.

Lloyd further argues that his detention by officer Sandage fell outside the class of arrests envisioned under section 806.1 of the Fresh Pursuit Act. He stops short of arguing that the Act forbids such detentions. Instead, he contends that allowing police officers to make arrests in their capacity as citizens will allow all citizens to pursue fleeing vehicles on the basis of minor traffic violations. He similarly argues that a police officer has no authority to use the indicia of his office in making a citizen's arrest.

■ The parties agree that the standard of our review is for correction of errors at law. Iowa R.App.P. 4. Because the detention occurred in Iowa, its validity is determined by Iowa law. *See Desjarlais v. State,* 73 Wis.2d 480, 243 N.W.2d 453, 459 (1976).

■ A. We first consider defendant's contention that no valid citizen's arrest could have occurred because officer Sandage only issued him a citation and a warning.

A citation in lieu of arrest is merely a procedure used by police to avoid taking a suspect of minor violations into custody. *See* Iowa Code chapter 805. Iowa Code section 805.1(3)(a) directs state and local law en-

---

1. Because we conclude that officer Sandage lawfully detained Lloyd for field sobriety tests by the Iowa police, it is unnecessary to pass on the State's contention it was unnecessary to exclude the evidence even if the detention was unlawful. *See generally State v. Garrow,* 480 N.W.2d 256, 258 (Iowa 1992) ("We have indicated that appli-cation of the exclusionary rule, which is a judicially created remedy and not a personal constitutional right, usually is required only where there has been a violation of a constitutional right or when a statute specifically requires exclusion.").

forcement agencies "to formulate uniform guidelines that will provide for the maximum possible use of citations in lieu of arrest...." Section 805.1(3)(b) lists factors to be considered in formulating these guidelines, such as whether a person refuses or fails to produce identification and whether detention appears reasonably necessary in order to halt a continuing offense or disturbance. These factors reflect the policy underlying the citation procedure, which is to avoid the task of taking suspects of petty offenses into immediate physical custody. *See* Black's Law Dictionary 243 (6th ed. 1990).

We acknowledge that in the citizen's arrest context no clear distinction exists between mere restraint and formal arrest. *See Kraft v. City of Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984); Restatement (Second) of Torts § 112, cmt. c (1965) ("An arrest, as here defined, includes a detention of another by the actor for the purpose of turning the other over to the custody of a peace officer or otherwise securing the administration of justice."). But if, as we believe, officer Sandage's conduct amounted to something less than a technical arrest, it was not thereby less lawful. *People v. Lyons*, 18 Cal.App.3d 760, 773, 96 Cal.Rptr. 76, 85 (1971) (observing that detention of the defendant "was not unlawful, for, although he did not arrest defendant, he could have lawfully done so").

■ Officer Sandage could have made a valid citizen's arrest for Lloyd's failure to have lighted taillights and for his expired registration. More important, after the stop of Lloyd's vehicle, officer Sandage could have taken Lloyd into custody on the basis of his belief that Lloyd was operating his truck "[w]hile under the influence of an alcoholic beverage or other drug or combination of such substances." Iowa Code § 321J.2(1)(a). Officer Sandage's decision to detain Lloyd while he called in an Iowa officer for the suspected OWI violation constituted prudent and commendable conduct, not an unlawful detention or arrest. *See Molan v. State*, 614 P.2d 79, 80 (Okla.Crim.App.1980).

B. Therefore, bearing in mind that officer Sandage's detention of Lloyd was no less valid than a formal citizen's arrest, we next consider defendant's argument that officer Sandage's use of his authority was inconsistent with the commission of an arrest (or detention) by a private citizen under Iowa Code section 804.9(1).

Section 1 of the Iowa Uniform Fresh Pursuit Law provides that law enforcement officials of another state who enter Iowa in fresh pursuit of a person believed to have committed a felony in the other state have the same authority to arrest and hold in custody the suspected felon as has any similar official in this state to arrest or hold in custody a person believed to have committed a felony in this state. Iowa Code § 806.1. This provision codifies the rule at common law that gave police the power to cross jurisdictional lines to arrest a fleeing felon. *See, e.g., Carson v. Pape*, 15 Wis.2d 300, 112 N.W.2d 693, 697 (1961); 5 Am.Jur.2d *Arrest* § 51, at 743 (1962).

The State makes no argument that section 806.1 authorized officer Sandage's detention of defendant Lloyd. Instead, it points to section 806.3, which provides, "Section 806.1 shall not be construed so as to make unlawful any arrest in this state which would otherwise be lawful." The State argues that one instance of such an otherwise lawful arrest is a citizen's arrest under Iowa Code section 804.9(1), which allows private persons to make an arrest for a public offense committed or attempted in the person's presence. This provision expands another rule at common law that allowed a private citizen to arrest without a warrant for breaches of the peace and for felonies committed in the citizen's presence. *See, e.g.,* Restatement (Second) of Torts §§ 140, 143.

■ An arrest by out-of-state officers is valid as a citizen's arrest under section 804.-9(1) if made for a public offense committed in the officers' presence. *See State v. O'Kelly*, 211 N.W.2d 589, 595 (Iowa 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974). In *O'Kelly*, Omaha, Nebraska, police arrested the defendants in Iowa for receiving stolen goods after observing the defendants in Iowa in possession of money bags stolen from an Omaha office. We noted: "When the Omaha officers came to Iowa,

they ceased to be officers but they did not cease to be persons." *Id.*

Although *O'Kelly* applied to a felony arrest, the authority to make a citizen's arrest under section 804.9 applies to any "public offense," not just a felony. Iowa Code section 701.2 defines "public offense" as "that which is prohibited by statute and is punishable by fine or imprisonment." Thus, the status of an offense as a felony or misdemeanor has no bearing on the grant of authority in section 804.9. *Accord People v. Campbell,* 27 Cal.App.3d 849, 853–54, 104 Cal.Rptr. 118, 121 (1972) (holding that for purposes of California's citizen's arrest statute, "[t]he term 'public offense' includes misdemeanors"); *State v. Sellers,* 350 N.W.2d 460, 462 (Minn.App.1984) (affirming conviction based on citizen's arrest in Minnesota by Wisconsin police officer who observed misdemeanor traffic violation in Wisconsin, then followed defendant to Minnesota, observing additional offenses); *cf. State v. Littlewind,* 417 N.W.2d 361, 363 n. 1 (N.D.1987) ("A private person's authority to make a warrantless arrest for a misdemeanor is more limited than that of a police officer.").

Applying these principles to the facts here, officer Sandage's conduct seems entirely lawful. He observed defendant commit the public offense of driving without taillights in South Dakota. *See* S.D.Codified Laws Ann. § 32–17–8 (1989). Officer Sandage therefore followed defendant across the state line into Iowa, where defendant finally pulled over. Although officer Sandage never formally arrested Lloyd, he gave Lloyd a warning for his broken taillights, cited Lloyd for having an expired motor vehicle registration, and lawfully detained Lloyd for field sobriety tests by an Iowa police officer.

C. Defendant nevertheless argues that to allow police officers to give chase to petty misdemeanants in making citizens' arrests will encourage ordinary citizens to give chase to petty misdemeanants as well. We find this argument unpersuasive.

Although a private citizen would have had the *authority* to arrest Lloyd for the public offense of driving with defective taillights, such a private citizen would have lacked the *means* to flag Lloyd down and ensure that

the violation be sanctioned. As the State points out, other laws deter citizens from engaging in the dangerous pursuit of other vehicles. *See, e.g.,* Iowa Code §§ 321.277 (reckless driving); 321.285 (speed restrictions); 321.433 (prohibiting sirens and bells without authorization).

Conversely, defendant contends that as soon as a police officer begins to act in his capacity as a private citizen, the officer loses the means otherwise at his disposal to give chase to a misdemeanant. Specifically, defendant argues that once officer Sandage crossed the Iowa border, he was prohibited from turning on his overhead lights to signal the defendant to pull over. When the officer takes police action as a private citizen, the argument goes, he must act like a private citizen.

The symmetry of defendant's proposed rule is undermined by its unwise policy. If an officer loses his power to use the indicia of his office simply by crossing the state line, it would impose a needless impediment on the police in their routine enforcement of motor vehicle regulations. Several authorities are in accord. *See State v. Phoenix,* 428 So.2d 262, 267 (Fla.App.1982) ("[W]hen officers acting outside their jurisdiction have valid grounds to make a citizen's arrest, the law does not require them to discard the indicia of their position before chasing after and subduing a criminal."); *Windschitl v. Commissioner of Public Safety,* 355 N.W.2d 146, 149 (Minn.1984) ("During the course of the high-speed chase, the lights and siren served the very practical purpose of alerting other travelers to the presence of the speeding vehicles."); *Littlewind,* 417 N.W.2d at 363 (allowing officer to use the "incidents of an officer's authority" in making an extrajurisdictional citizen's arrest when in fresh pursuit); Restatement (Second) of Torts § 121, cmt. d ("[I]t is immaterial whether he purports to act in his capacity as peace officer....").

We believe that officer Sandage's use of the indicia of his office was proper and that this conclusion is consistent with the limitations on ordinary private citizens in making citizen's arrests.

III. *Disposition.* We conclude that officer Sandage's detention of defendant Lloyd in Iowa was lawful. The district court therefore did not err in overruling defendant's motion to suppress the evidence of his intoxication or in overruling his motion to dismiss. The OWI judgment is affirmed.

**AFFIRMED.**