**Anna BRADLEY and Bradley Computer Training Consultants, Inc., Appellants,**

**v.**

**IOWA DEPARTMENT OF PERSONNEL, Iowa Department of Management, and Iowa Department of Economic Development, Appellees.**

No. 97–1567.

Supreme Court of Iowa.

July 8, 1999.

Victoria L. Herring, Des Moines, for appellants.

Thomas J. Miller, Attorney General, and Grant K. Dugdale, Assistant Attorney General, for appellees.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

CARTER, Justice.

Bradley Computer Training Consultants, Inc., a computer training business, and Anna Bradley, its proprietor, appeal from an adverse judgment in their challenge to the contract-letting procedures of certain state agencies. For convenience in reference, we will discuss the case as if Anna Bradley is the only appellant. The appellees are the Iowa Department of Personnel (IDP), the Iowa Department of

Management (IDM), and the Iowa Department of Economic Development (DED). After reviewing the record and considering the arguments presented, we affirm the judgment of the district court in part, reverse it in part, and remand the case for further proceedings in that court.

In 1993, before Bradley had commenced business, IDP took competitive bids for computer skills training courses. This was in connection with its program for personnel development seminars. The bids were for specifically cataloged programs on stated dates for a period of one fiscal year. The contract was awarded to Integrated Software Solutions, Inc. (ISS). The contract did not contain an option for renewal without rebidding. Notwithstanding this circumstance, IDP renewed ISS's contract for the same or modified catalog programs for each successive fiscal year through June 30, 1996.

In October 1995 Bradley learned that the Iowa Department of Transportation (DOT) needed sixty introductory level computer training sessions. She contacted DOT and offered to submit a bid for these programs. She was advised by DOT that IDP supplied that agency with computer training services. Thereafter, Bradley contacted the director of IDP's program for personnel development seminars and inquired about DOT's training requirements. She was advised that the vendor under contract with IDP for its catalog programs would also be handling the special training sessions required by DOT.

Later, Bradley received information from an IDP facilitator that the contract for the personnel development seminars that were cataloged for the fiscal year commencing July 1, 1996, would be submitted to bid in June of 1996. She did not submit a bid for that contract because the number of training sessions specified in the catalog program was beyond her company's capacity. Four companies did bid on the catalog program for the fiscal year beginning July 1, 1996. Those bids were reviewed by a four-person committee, which scored the agency's current vendor, ISS, as the most qualified bidder and awarded the contract to that company.

Bradley brought this action for review of agency action pursuant to Iowa Code chapter 17A. She challenged the procedures that were used by the agencies in question in contracting with personal service vendors. She maintained that, in acting without a competitive bidding process, the agencies were violating Iowa Code section 18.6(1) (1993), Executive Order 50, and other agency regulations. She also contends that the awarding of the July 1, 1996 contract to ISS was invalid because of advantages that company had secured through its prior dealings with the state. She also contends that one member of the four-person committee that evaluated the bids had a conflict of interest because of that person's relationship with the president of ISS. We consider each of these contentions. Other facts that bear on our decision will be stated in connection with our discussion of the legal issues presented.

I. *Whether the Contract for IDP's Personnel Development Seminars was Subject to Statutes and Regulations Governing Central Purchasing Through the Iowa Department of General Services (DGS).*

■ Bradley urges that Iowa Code section 18.6(1), which specifies that "[a]ll equipment, supplies, or services procured by the department [of general services] shall be purchased by a competitive bidding procedure," is applicable to the purchases of computer training services by IDP that are at issue here. She bases this contention on the language of section 18.3(1), which provides, in part, "all items of general use shall be purchased through the department [of general services]." In the implementation of section 18.3(1), DGS has issued regulations identifying three types of contract purchases subject to this central purchasing mandate. These are (1) the purchase of items that are in gen-

eral use by all agencies such as typewriters, photographic film, adding machines, lavatory supplies, filing cabinets, hand tools, and light bulbs; (2) specific commodities that are primarily used by one agency and that are not commonly needed by another agency such as uniforms, janitorial services, shelving, ice and snow removal, survey equipment and supplies; and (3) commodities for which standard state specifications have been established and which are in common use by a majority of the state agencies. Iowa Admin. Code r. 401–7.3.

Another DGS regulation specifies that, with respect to the purchase of data processing equipment, services, and software, all vendors shall be given a fair and reasonable opportunity to offer their products to the state. Iowa Admin. Code r. 401–8.1. That rule is made applicable to "systems and programming procedures" and "nonmechanized and nonphysical components, arrangements, procedures, programs, services, sequences and routines utilized to support, guide, control, direct, or monitor data processing equipment or applications." Iowa Admin. Code r. 401–8.2.

The district court rejected Bradley's claim that the IDP training programs at issue here were subject to the central purchasing mandates that require acquisition through DGS. It based that conclusion on the provisions of section 18.3(1), which limit the central purchasing mandate to "all items of general use." With regard to the specific DGS regulations pertaining to computer equipment and software, the district court held that these did not embrace contracts for the training of agency personnel.

We are satisfied that the district court correctly interpreted the central purchasing mandate of section 18.3(1) and the applicable administrative regulations. The categories of contracting specified in the DGS regulations do not suggest that personal service contracts for the training of employees are subject to the central purchasing mandate. Those regulations of

DGS specifically relating to computer services do not extend to contracts for the training of agency personnel in the use of new technology acquired by the state. Bradley may prevail on this theory only if DGS was mandated by section 18.3(1) to include these personal service contracts within its central purchasing procedures. We do not believe that the statute contains such a mandate.

Other jurisdictions, who have not statutorily excluded personal or professional service contracts from competitive bidding, have determined that competitive bidding requirements do not apply to contracts for personal or professional services. *See* 64 Am.Jur.2d *Public Works & Contracts* § 43, at 896–98 (1972) (explaining that "statutory provisions requiring public contracts to be let upon competitive bidding do not apply to certain contracts for personal services"); 72 C.J.S. *Public Contracts* § 9 (1975); 10 Eugene McQuillin, *Law of Municipal Corporations* § 29.35 (3d ed. rev.1999); *see also Parker v. Panama City*, 151 So.2d 469, 472 (Fla.Dist.Ct. App.1963) (applying the general rule that contracts for services requiring special skills or training are not required to be let on bids under a statutory provision that contracts with the state or municipality must not be entered into without first advertising for bids); *Attlin Constr., Inc. v. Muncie Community Schs.*, 413 N.E.2d 281, 287–88 (Ind.Ct.App.1980) (same); *State ex rel., Doria v. Ferguson*, 145 Ohio St. 12, 60 N.E.2d 476, 478 (1945) (same); *McMaster Constr., Inc. v. Board of Regents of Oklahoma Colleges*, 934 P.2d 335, 338 (Okla.1997) (same); *Waste Management, Inc. v. Wisconsin Solid Waste Recycling Auth.*, 84 Wis.2d 462, 267 N.W.2d 659, 665 (Wis.1978) (same). *But cf. Fisher v. Department of Labor*, 265 So.2d 817 (La.Ct.App.1972) (finding that contracts for personal services were not exempt from statutory competitive bidding requirements). The Iowa Legislature has expressed agreement with the general rule by explaining, in conflicts-of-interests stat-

utes, that the competitive bid requirement necessary in those provisions to avoid an invalid contract does not apply to a contract for professional services, which is not customarily awarded by competitive bid. *See* Iowa Code § 331.342(4) (1997).

■ The Iowa Attorney General has also adopted this position. The attorney general expressed, in two opinions, that competitive bidding procedures may not apply to contracts for professional services. *See* 1994 Iowa Op. Att'y Gen. 141; 1992 Iowa Op. Att'y Gen. 192. The attorney general explained that the selection of professional services may turn on subjective elements that are not susceptible to formulation in the bidding process. *See* 1992 Iowa Op. Att'y Gen. 192. Although this court is not bound by an opinion of the attorney general, the opinion is entitled to the court's respectful consideration. *City of Clinton v. Sheridan*, 530 N.W.2d 690, 695 (Iowa 1995); *Woodbury County v. City of Sioux City*, 475 N.W.2d 203, 207 (Iowa 1991).

## II. Whether Executive Order 50 and Revenue Procedure 240.102 Were Violated by IDP's Contracting Procedures.

As an alternative to the argument that we considered in the prior division of this opinion, Bradley urges that IDP's contracting procedures for personnel development seminars violated Executive Order 50. That executive order was promulgated by Governor Ray on January 12, 1983. It required the state comptroller to develop a procedures manual to be followed by state agencies in the solicitation and selection of professional service providers. Acting pursuant to that order, the Iowa Department of Revenue and Finance, as successor to the state comptroller through government reorganization, promulgated Revenue Procedure 240.102. This is an auditing directive, which states, in part, "it is the policy of the state of Iowa that every expenditure of public funds to personal service contractors shall, insofar as practi-

cable, be made through an open, competitive process."

■ As a preliminary matter, we note that, except in selected instances not applicable here, an executive order or directive by the governor does not fall within the definition of a "rule" under the Iowa Administrative Procedure Act. Iowa Code § 17A.2(10). The revenue procedure promulgated in response thereto was intended as a manual for state agencies to follow in order that their actions would comply with the department of revenue and finance's auditing procedures. Implicitly, those auditing procedures were to be used to assist in the implementation of Executive Order 50.

Although Revenue Procedure 240.102 is not contained in the Iowa Administrative Code, it does meet the definition of an agency rule set forth in Iowa Code section 17A.2(10). Appellees do not dispute that this directive stands as a lawful mandate governing actions by the affected state agencies. Nor do appellees challenge Bradley's contention that violation of those mandates by a state agency may be considered as agency action "made upon unlawful procedure" under the provisions for judicial review in section 17A.19(8)(d).

In examining whether the IDP contracting procedures challenged by Bradley were in violation of Revenue Procedure 240.102, we agree with appellees' contention that neither the executive order nor the revenue procedure expressly mandate competitive bidding for professional service contracts. However, Revenue Procedure 240.102 does mandate that every expenditure of public funds for personal service contracts "shall, insofar as practicable, be made through an open, competitive process." We do not need to determine in the present case what that process must be because it is clear that, with respect to Bradley's complaints, IDP engaged in no competitive process whatsoever.

In considering Bradley's complaints concerning the alleged violation of Executive Order 50 and Revenue Procedure 240.102, the district court concluded that she was not an aggrieved party that could seek relief for the contracting procedures of IDP on the catalog programs for personal development seminars. That determination was based on the circumstances that (1) her company was not in existence at the time the ISS contract for catalog services was renewed without resort to any competitive process, and (2) Bradley's company did not elect to bid on the catalog programs for the 1996–97 fiscal year. We agree with these conclusions by the district court in some respects and not in others.

█ Bradley may not challenge the contract renewals on the ISS catalog courses that occurred prior to the time that her company was in existence. We believe, however, that she may challenge the procedures for bidding on the 1996–97 catalog courses to the extent she claims that those procedures included unreasonable requirements that precluded her from bidding. She may not challenge the procedures employed in evaluating the 1996–97 bidding on other grounds such as conflict of interest on the part of one of the evaluators or favoritism toward ISS in the bidding specifications.

█ Bradley claims that the 1996–97 bidding procedures were unreasonable in a manner that precluded her participation due to the magnitude of the programs that were included within a single contract. This contention is premised in part on her status as a targeted small business under Iowa Code sections 73.16 and 73.17. Two statutory requirements are involved here. The first requirement is that each agency must establish a goal for procurement of goods and services from targeted small businesses during the next fiscal year. Such goal shall not be less than ten percent of the agency's procurements. Iowa Code § 73.16(2). Bradley has offered no evidence that any of the agencies that are parties to this litigation have failed to comply with that section. The second requirement is that "all purchasing authorities shall assure that a proportionate share of ... targeted small businesses ... are given the opportunity to bid on *all solicitations* issued by agencies and departments of state government." Iowa Code § 73.16(1) (emphasis added). Seizing on the language "all solicitations," Bradley argues that this mandate requires that contract specifications be tailored as to the quantity of goods and services demanded so as to be within the capacity of a targeted small business. We conclude that this would be an unwarranted extension of the statute's mandate that would be impossible to comply with in all situations. In applying the statutory mandate to the present controversy, we are convinced that, in order to show a violation, Bradley must establish that the magnitude of the bidding specifications was unreasonable based on the needs of the agency with respect to the particular contract and the agency's record of compliance with the annual procurement goals for targeted small businesses that have been established pursuant to the statute. She has failed to establish a violation based on that standard.

█ The district court did find that Bradley had standing to challenge the procedures under which the contract for special training courses for DOT personnel was granted in 1995. We agree. In rejecting Bradley's challenge to IDP's action in granting the contract for the 1995 DOT training course to its catalog service provider, ISS, the district court accepted the agency's contention that this was required to satisfy a very pressing time constraint for the DOT programs. We find that any claim by IDP that it actually considered that exigency is not supported by the record. Absolutely no specifics were provided as to what these time constraints were. Moreover, the agency candidly conceded that it awarded all contracts for training sessions not included in the catalog courses to its contract vendor, ISS. We are satisfied that this action by the agency

was a violation of the mandate set forth in Revenue Procedure 240.102 that "every expenditure of public funds to personal service contractors shall, insofar as practicable, be made through an open, competitive process." Because IDP routinely violated this requirement, we must conclude that it violated it with respect to the awarding of the DOT contract with which we are confronted.

The contract under which ISS was operating at the time the 1995 DOT training programs were formulated had not been concluded through an open, competitive process. But, even if it had, it only related to the catalog programs for that fiscal year. In awarding contracts for programs not included in ISS's contract, IDP was subject to the requirements of Revenue Procedure 240.102.

In determining the relief to which Bradley is entitled as a result of IDP's violation of Executive Order 50 and Revenue Procedure 240.102, our task is simplified by her narrowing of her demands to declaratory relief at the time of oral argument. The portion of the district court's decision rejecting Bradley's claims with respect to the catalog courses is affirmed. The district courts order is reversed to the extent that it denied any relief on Bradley's challenge to the procedures in awarding the 1995 DOT training services. The case is remanded to the district court to amend its decision by granting appropriate declaratory relief. At this time, the district court may also consider Bradley's claim for attorney fees pursuant to Iowa Code section 625.29. That claim is contained in her petition for judicial review and was not considered by the district court because of the manner in which the case was decided in that court. It may be considered on remand. *See, e.g., Waterhouse v. Iowa Dist. Ct.,* 593 N.W.2d 141, 143 (Iowa 1999).

We have considered all issues presented and conclude that the decision of the district court should be affirmed in part and reversed in part. We remand the case to that court for further proceedings that have been made necessary by this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**