# IN THE SUPREME COURT OF IOWA

No. 17–1803

Filed October 19, 2018

**RICKIE RILEA** and **TIMOTHY RILEY,**

Appellees,

vs.

**IOWA DEPARTMENT OF TRANSPORTATION,**

Appellant.

---

Appeal from the Iowa District Court for Polk County, Eliza Ovrom Judge.

The Iowa Department of Transportation appeals a district court judgment reversing declaratory orders issued by the department. **AFFIRMED.**

Thomas J. Miller, Attorney General, David S. Gorham, Special Assistant Attorney General, and Robin G. Formaker and Richard E. Mull, Assistant Attorneys General, for appellant Iowa Department of Transportation.

Brandon Brown and Gina Messamer of Parrish, Kruidenier, Dunn, Boles, Gribble, Gentry, Brown & Bergmann, L.L.P., Des Moines, for appellees Rickie Rilea and Timothy Riley.

**MANSFIELD, Justice.**

### I. Introduction.

This appeal requires us to decide whether, before May 11, 2017, Iowa Department of Transportation (IDOT) Motor Vehicle Enforcement (MVE) officers could issue traffic citations unrelated to operating authority, registration, size, weight, and load. Two motorists were separately cited by MVE officers in 2016 for speeding in a construction zone. They sought declaratory orders that MVE officers lacked authority to stop vehicles and issue these citations. In the declaratory order proceedings, the IDOT concluded that its officers possessed this authority. However, on petition for judicial review, the district court found otherwise and reversed.

On appeal, we conclude that MVE officers lacked authority during the relevant time period to stop vehicles and issue speeding tickets or other traffic citations that did not relate to operating authority, registration, size, weight, and load. Neither Iowa Code chapter 321 nor Iowa Code chapter 804, the two fonts of authority cited by the IDOT, provided the necessary legal grounding for the MVE officers' actions.

More specifically, Iowa Code section 321.477, at the time, authorized IDOT peace officers "to make arrests for violations of the motor vehicle laws relating to . . . operating authority, registration, size, weight, and load." Iowa Code § 321.477 (2016).[1] However, it did not provide authority for arrests relating to *other* traffic violations. Meanwhile, Iowa Code section 804.9 empowers a "private person" to make an arrest "[f]or a public offense committed or attempted in the person's presence." *Id.* § 804.9. Yet, section 804.9 does not extend to individuals who are *not* private persons, and in any event, it does not confer authority on individuals to

_____

[1]Unless otherwise noted, Code references in this opinion are to the 2016 Iowa Code.

issue *citations* in lieu of arrest. Only peace officers may issue citations in lieu of arrest. *See id.* § 805.1(1). For these reasons and others discussed in the body of this opinion, we affirm the judgment of the district court.

## II. Facts and Procedural Background.

At approximately 12:30 p.m. on September 12, 2016, Rickie Rilea was traveling southbound on Interstate 35 in Warren County when he was stopped by an IDOT MVE officer. Rilea received a citation for going sixty-six miles per hour in a roadwork zone with a fifty-five miles-per-hour speed limit. *See id.* § 321.285.

At approximately 8:30 a.m. on September 27, Timothy Riley was proceeding on Interstate 35 in Warren County when he was stopped by an IDOT MVE officer. Riley was cited by the officer for traveling seventy-eight miles per hour in a fifty-five miles-per-hour roadwork zone. *See id.*

On March 23, 2017, Rilea and Riley separately sought declaratory orders from the IDOT determining that the IDOT's authority was limited to that set forth in Iowa Code section 321.477 and that the IDOT could not stop drivers and issue citations for violations unrelated to operating authority, registration, size, weight, and load. Their petitions for declaratory orders alleged that between August 19, 2014, and August 19, 2016, MVE employees wrote over 12,840 citations unrelated to operating authority, registration, size, weight, and load for motorists driving noncommercial vehicles and that the IDOT maintained an internal policy whereby MVE officers were directed to stop any motorist observed violating any Iowa law and issue an appropriate citation.[2] To detect these violations, MVE employees used state-issued radar detectors. MVE employees also used official MVE vehicles with overhead flashing lights

---

[2]The IDOT disputed that it has such a policy, but Rilea and Riley submitted exhibits tending to show the existence of such a policy.

and sirens to effectuate these traffic stops. MVE employees did not take these motorists before a magistrate or deliver them to a peace officer. During the same time period, MVE employees wrote a lesser number of citations—9,400—relating to operating authority, registration, size, weight, and load.

On April 26, the IDOT issued a declaratory order in each proceeding. The orders recognized the "limiting nature of Iowa Code § 341.477" and instead relied on section 804.9(1), holding,

> [S]o long as an offense is committed or attempted in the officer's presence, DOT MVE peace officers while acting *in the performance of their regular duties* may make an arrest for the offense, and the arrest is lawful because of the citizen arrest powers in Iowa Code section 804.9.

On May 23, Rilea and Riley filed separate petitions for judicial review with the Polk County District Court. *See id.* § 17A.19(10). The petitions were later consolidated. Each petition alleged that "IDOT employees do not have authority to stop motorists or issue citations for violations unrelated to operating authority, registration, size, weight, and load."

On October 24, after hearing argument, the district court reversed the IDOT's declaratory orders. The court reasoned,

> IDOT admits it lacks authority under Section 321.477 to issue citations for matters other than operating authority, registration, size, weight, and load, yet it argues its officers have citizen arrest authority to do so for violations which occur in their presence. The citizen's arrest statute applies to "private persons." The record shows that IDOT has 100 uniformed officers, who drive marked cars with lights and sirens, and who possess radar guns to catch speeders. They have issued thousands of citations for matters other than operating authority, registration, size, weight, and load. They are not acting as private persons, but as state actors. In addition, they do not take people into custody for a formal arrest. Under the plain language of Section 804.9 and the Iowa Supreme Court's ruling in . . . *Merchants Motor Freight[, Inc. v. State Highway Commission*, 239 Iowa 888, 32 N.W.2d 773 (1948),] . . . the citizen's arrest statute does not give them authority to do so.

The IDOT appealed, and we retained the appeal.

### III. Standard of Review.

We examine district court reviews of agency decisions to determine whether the court applied the law correctly. *Hawkeye Land Co. v. Iowa Utils. Bd.*, 847 N.W.2d 199, 207 (Iowa 2014). We apply the standards set forth in Iowa Code section 17A.19(10) and "determine whether our application of those standards produce[s] the same result as reached by the district court." *Id.* (alteration in original) (quoting *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 589 (Iowa 2004)).

The level of deference owed to an agency's interpretation of a statute turns on whether the legislature vested the agency with the interpretive authority. *See* Iowa Code § 17A.19(10)(*c*); *Hawkeye Land Co.*, 847 N.W.2d at 207. The legislature did not expressly grant interpretive authority to the IDOT in chapter 321. Although the legislature gave the IDOT the authority to "administer and enforce the provisions" of Iowa Code chapter 321 "[e]xcept as otherwise provided by law," Iowa Code § 321.2(1), this is not the same as interpretive authority, *see Watson v. Iowa Dep't of Transp.*, 829 N.W.2d 566, 569 (Iowa 2013) (determining that the IDOT was not vested with the authority to interpret Iowa Code section 321.208). Moreover, the language at issue does not involve "substantive term[s] within the special expertise of the agency." *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 14 (Iowa 2010). Additionally, much of this case involves chapter 804, which is not part of the IDOT's domain. *See id.* (noting that interpretive power has not been vested with the agency when "the provisions to be interpreted are found in a statute other than the statute the agency has been tasked with enforcing"). Because there is no clear indication that the legislature vested the IDOT with authority to interpret Iowa Code sections 321.477 and 804.9, "we review for erroneous

interpretations of law." *Hawkeye Land Co.*, 847 N.W.2d at 207 (quoting *Iowa Dental Ass'n v. Iowa Ins. Div.*, 831 N.W.2d 138, 143 (Iowa 2013)); *see* Iowa Code § 17A.19(10)(*c*).

### IV. Analysis.

**A. IDOT Authority Under Chapter 321.** We first consider whether IDOT MVE officers had authority based on chapter 321 to issue tickets for traffic violations. To do so, we begin by tracing the IDOT's statutory authority under that chapter.

In 1913, the general assembly enacted legislation to establish the Iowa State Highway Commission, the predecessor to the IDOT. 1913 Iowa Acts ch. 122, title. In 1941, the legislature conferred authority on the highway commission to stop motor vehicles or trailers "on the highways for the purposes of weighing and inspection, to weigh and inspect the same and to enforce the provisions of the motor vehicle laws relating to the size, weight and load of motor vehicles and trailers." 1941 Iowa Acts ch. 177, § 1 (codified at Iowa Code § 321.476 (1946)). Additionally, the highway commission received authority to designate certain employees as peace officers "to control, direct, and weigh traffic on the highways, and to make arrests for violations of the motor vehicle laws relating to the size, weight and load of motor vehicles and trailers." 1941 Iowa Acts ch. 177, § 2 (codified at Iowa Code § 321.477 (1946)).

Sixteen years later, in 1957, the general assembly amended Iowa Code section 321.477 to expand the highway commission's authority so that it included violations relating to registration. 1957 Iowa Acts ch. 160, § 2 (codified at Iowa Code § 321.477 (1958)).

Then, in 1974, the general assembly established the IDOT. 1974 Iowa Acts ch. 1180, preamble. At that time, "the duties and responsibilities of the state highway commission [were] transferred to the

state department of transportation." *Id.* The IDOT inherited the authority previously vested in the highway commission by the legislature through Iowa Code section 321.477. *Id.* § 107 (codified at Iowa Code § 321.477 (1975)). The same legislation also amended section 321.477 to add "operating authority" to the list of violations that the agency's peace officers could enforce. *Id.*

Previously, in 1939, the department of public safety (DPS) had been created, thereby centralizing all state peace officers. 1939 Iowa Acts ch. 120, § 1 (codified at Iowa Code § 80.1 (1946)). In the same 1974 legislation that formed the IDOT, the legislature also specified,

> The division of the highway safety patrol of the [DPS] shall enforce the provisions of this chapter relating to traffic on the public highway[s] of the state, including those relating to the safe and legal operation of passenger cars, motorcycles, motor trucks, and buses, and to see that proper safety rules are observed.

1974 Iowa Acts ch. 1180, § 101 (codified at Iowa Code § 321.2 (1975)).

This division of labor between the IDOT and the DPS remained in place until 2017. Thus, when Rilea and Riley received their speeding tickets from the IDOT in 2016, Iowa Code section 321.477 stated in pertinent part as follows:

> The [IDOT] may designate by resolution certain of its employees upon each of whom there is hereby conferred the authority of a peace officer to control and direct traffic and weigh vehicles, and to make arrests for violations of the motor vehicle laws relating to the operating authority, registration, size, weight, and load of motor vehicles and trailers and registration of a motor carrier's interstate transportation service with the department.

Iowa Code § 321.477.

In 2017, after controversy arose about the authority of the IDOT's MVE officers, the general assembly amended Iowa Code section 321.477 so it now reads in pertinent part as follows:

1. The [IDOT] may designate by resolution certain of its employees upon each of whom there is conferred the authority of a peace officer to enforce all laws of the state including but not limited to the rules and regulations of the department. Employees designated as peace officers pursuant to this section shall have the same powers conferred by law on peace officers for the enforcement of all laws of this state and the apprehension of violators.

2. Employees designated as peace officers pursuant to this section who are assigned to the supervision of the highways of this state shall spend the preponderance of their time conducting enforcement activities that assure the safe and lawful movement and operation of commercial motor vehicles and vehicles transporting loads, including but not limited to the enforcement of motor vehicle laws relating to the operating authority, registration, size, weight, and load of motor vehicles and trailers, and registration of a motor carrier's interstate transportation service with the department.

Iowa Code § 321.477 (2018). The amendment was deemed of immediate importance and took effect upon its enactment on May 11, 2017.[3] 2017 Iowa Acts ch. 149, § 5.

Rilea and Riley contend that this amendment demonstrates the general assembly realized a need in 2017 to fix a gap in the IDOT's enforcement authority. The IDOT maintains that the 2017 amendment merely clarified preexisting law.

In *Merchants Motor*, our court addressed the scope of the highway commission's enforcement authority. 239 Iowa at 892–93, 32 N.W.2d at 775–76. A Minnesota corporation operated trucks "over established routes and between fixed terminals both within and without" Iowa. *Id.* at 889, 32 N.W.2d at 774. Some trucks were licensed in Iowa, others in Minnesota. *Id.* at 889–90, 32 N.W.2d at 774. The highway commission issued summonses to the trucks with Minnesota registrations, claiming that they

---

[3]The 2017 amendment also included a sunset provision that would have terminated its effect on July 1, 2018. *See* 2017 Iowa Acts ch. 149, § 4. In the following legislative session, the legislature extended the term of the sunset to July 1, 2019. *See* 2018 Iowa Acts ch. 1170, div. II, § 3.

were improperly licensed and asserting that the commission could enforce laws relating to registration in addition to those relating to size, weight, and load. *Id.* at 890, 32 N.W.2d at 774.[4]

The Minnesota corporation sought and obtained an injunction against the highway commission's actions. *See id.* at 890, 32 N.W.2d at 774–75. On appeal, we affirmed the trial court. *Id.* at 896, 32 N.W.2d at 777. We found that the highway commission's enforcement authority was limited to that expressly conferred in Iowa Code section 321.477. *Id.* at 892, 32 N.W.2d at 775. We said, "The authority of the [highway commission], under the motor vehicle statutes, is limited to size, weight and load of vehicles and the trial court was correct in so holding." *Id.* at 893, 32 N.W.2d at 776.

Our court also emphasized that chapter 80, concerning the DPS, prohibited "other departments and bureaus of the state . . . from employing special peace officers or conferring upon regular employees any police powers to enforce provisions of the statutes, which are specifically reserved by this act to this department." *Id.* at 891, 32 N.W.2d at 775 (quoting Iowa Code § 80.22 (1946)). Today, Iowa Code section 80.22 contains virtually identical language:

> All other departments and bureaus of the state are hereby prohibited from employing special peace officers or conferring upon regular employees any police powers to enforce provisions of the statutes which are specifically reserved by the 1939 Iowa Acts, ch. 120, to the department of public safety.[5]

---

[4]This was before the 1957 amendment noted above that gave the highway commission express authority over registration violations.

[5]The authority reserved by the legislature in 1939 to the DPS included the following:

> 2. To enforce all laws relating to traffic on the public highways of the state, including those relating to the safe and legal operation of passenger cars, motorcycles, motor trucks and busses; to issue operators'

Iowa Code § 80.22 (2018). Therefore, section 80.22 expressly barred, and still bars, other agencies from bestowing on their own peace officers authority reserved to the DPS.

The conclusion we reached in *Merchants Motor* as to the highway commission would logically apply to the IDOT, because the IDOT succeeded to the highway commission's powers and any limitations on those powers. In *State v. A-1 Disposal*, decided after the IDOT replaced the highway commission, we upheld the legality of stops for weighing purposes that IDOT officers had performed at a temporary checkpoint. 415 N.W.2d 595, 595–96 (Iowa 1987). In finding that such stops were constitutional because the intrusion on individual drivers was "relatively slight," we emphasized "DOT officers' power to intrude on individuals is strictly limited by the Iowa Code to inspecting for registration, weight, size, load and safety violations." *Id.* at 599 (citing Iowa Code §§ 321.476, .477, .492 (1985)).

Notwithstanding the pre-2017 wording of Iowa Code section 321.477, and the decisions in *Merchants Motor* and *A-1 Disposal*, the IDOT argues that it had general authority to issue speeding tickets and other traffic citations based on sections 321.2 and 321.285 and *State v. Moore*, 609 N.W.2d 502 (Iowa 2000) (en banc).

Iowa Code section 321.2(1) does empower the IDOT to "administer and enforce the provisions of [chapter 321]." Iowa Code § 321.2(1). However, this is subject to the caveat, "[e]xcept as otherwise provided by law." *Id.* Section 321.2(2), meanwhile, authorizes the *DPS* to "enforce the provisions of this chapter relating to traffic on the public highways of the

and chauffeurs' licenses; to see that proper safety rules are observed and to give first aid to the injured[.]

1939 Iowa Acts ch. 120, § 8 (codified at Iowa Code § 80.9(2)(*b*) (1946)).

state." *Id.* § 321.2(2). As we noted in *Merchants Motor*, section 321.2(2) is effectively an express reservation for the DPS, and under section 80.22, other state agencies are not allowed to encroach on it. *See* 239 Iowa at 891, 32 N.W.2d at 775. So section 321.2 cannot provide authority that the IDOT would not otherwise have to issue traffic citations.

Iowa Code section 321.285 establishes a number of statewide speed restrictions while affording the IDOT some discretion over speed limits on certain public highways. *See* Iowa Code § 321.285(5). But it is a grant of authority to the IDOT to *set* speed limits, not to *enforce* them with stops, citations, and arrests. *City of Des Moines v. Iowa Dep't of Transp.*, 911 N.W.2d 431, 448 (Iowa 2018) (indicating that Iowa Code § 321.285(5) allows the IDOT to establish speed limits in some circumstances on fully controlled-access highways but not methods of enforcing speed limits). Accordingly, section 321.285 does not support the IDOT's positon in this case.

In *Moore*, we upheld, over constitutional objections, a stop performed by an Iowa Department of Natural Resources (DNR) officer of a moving vehicle in a state park. *See Moore*, 609 N.W.2d at 502–03. However, the DNR officer stopped the vehicle not to issue a speeding citation, but simply to warn the driver to slow down because it was dark and campers were nearby. *Id.* at 503. This was a valid community caretaking activity. *Id.* at 504. We did say that Iowa Code section 321.285 "confers a public safety function on Iowa peace officers as well as a law enforcement function." *Id.* Perhaps the authority for a DNR officer to stop a vehicle for speeding in a state park could more readily be found in a combination of Iowa Code sections 456A.13, 461A.26, and 461A.36, which authorize the DNR to employ peace officers and establish speed limits in state parks, and authorize DNR officers to enforce the laws in areas under

the DNR's jurisdiction. *See* Iowa Code § 456A.13; *id.* §§ 461A.26, .36. Regardless, *Moore* did not involve the issuance of a traffic citation.

Accordingly, we conclude that nothing in Iowa Code chapter 321 as written and as judicially interpreted would have allowed IDOT MVE officers to issue traffic citations before 2017.

The IDOT argues that allowing its officers to ticket speeding vehicles in construction zones enhances public safety. However, general considerations of public policy are not enough here to outweigh clear statutory language or longstanding precedent. Prior to May 11, 2017, IDOT peace officers were conferred only limited authority by chapter 321 to enforce violations relating to operating authority, registration, size, weight, and load of motor vehicles and trailers.

**B. IDOT Authority to Make Citizen's Arrests Under Iowa Code Section 804.9.** The IDOT urges that even if it did not have authority to issue the traffic citations under Iowa Code chapter 321, it possessed such authority under section 804.9. That section provides, "A private person may make an arrest . . . [f]or a public offense committed or attempted in the person's presence." *Id.* § 804.9(1).

"When we are asked to interpret a statute, we first consider the plain meaning of its language." *State v. Nall*, 894 N.W.2d 514, 518 (Iowa 2017). An IDOT MVE officer performing her or his official duties would not normally be considered a "private person." Moreover, "we read statutes as a whole rather than looking at words and phrases in isolation." *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Justice*, 867 N.W.2d 58, 72 (Iowa 2015). It is significant that a nearby Iowa Code section covers the subject of arrests "by peace officers." Iowa Code § 804.7. It would seem illogical, then, if the term "private person" as used a few sections later in the Code also embraced peace officers acting in their official capacity.

Additionally, although automated traffic enforcement has changed the playing field, at the time these statutes were written most traffic violations on public highways would have occurred *in the presence of the person issuing the citation* (if they were detected at all). It would seem odd, therefore, for the legislature to limit the "peace officer" authority over these violations on public highways to the DPS under Iowa Code sections 80.22 and 321.2(2) while allowing other state agencies to circumvent that authority easily by claiming "private person" status.

Furthermore, while Iowa Code section 804.9 authorizes so-called citizen's arrests, only a peace officer may issue a citation in lieu of arrest. Iowa Code section 805.1(1) states,

> [A] *peace officer* having grounds to make an arrest may issue a citation in lieu of making an arrest without a warrant or, if a warrantless arrest has been made, a citation may be issued in lieu of continued custody.

*Id.* § 805.1(1) (emphasis added). Even if IDOT MVE officers could be deemed "private persons" for purposes of Iowa Code section 804.9 while performing their official duties, they would also have to be deemed "peace officers" at the same time to take advantage of the authority vested by Iowa Code section 805.1—permitting citations in lieu of an arrest. In our view, that doesn't work.

In *Merchants Motor*, the highway commission argued that its officers could rely on citizen's arrest authority. 239 Iowa at 893, 32 N.W.2d at 776. We disagreed:

> [The Highway Commission states t]hat when [a registration violation is] committed in his presence any person may arrest, and the fact that the defendants are clothed with the authority of peace officers, does not prevent them from acting as individuals. This no doubt is true, but is not a question presented here for determination. The record clearly shows that defendants acted, and in the future will act, officially and under orders from the Highway Commission. Furthermore,

> the appellants do not threaten arrests and have not arrested. They have issued summonses which are not authorized by Section 755.5 [now Iowa Code section 804.9.] There is not merit in this contention.

*Id.* In short, although peace officers could "act[] as individuals," for example if they were off-duty, the citizen's arrest authority did not apply to peace officers acting "officially and under orders." *Id.* In any event, authority to issue summonses did not necessarily follow from arrest authority. *Id.*

More recently, in *State v. Lloyd*, we relied on Iowa Code section 804.9(1) to uphold a stop performed by a South Dakota police officer of a vehicle that had crossed over into Iowa. 513 N.W.2d 742, 745 (Iowa 1994). The officer initially tried to pull over the defendant in South Dakota for traveling without lighted taillights. *Id.* at 742. The defendant failed to stop, and the South Dakota officer followed him into Iowa, where he succeeded in pulling him over. *Id.* at 742–43. After citing the defendant for operating his truck without lighted taillights and driving with an expired license plate, the officer noticed that the defendant looked intoxicated and called an Iowa police officer to the scene. *Id.* at 743. The defendant was subsequently convicted in Iowa of operating while intoxicated (OWI). *Id.*

On appeal, the defendant argued that the South Dakota officer, who used his official vehicle to give chase to the defendant, had "no authority to use the indicia of his office" to make a citizen's arrest. *Id.* He also insisted that "no valid citizen's arrest could have occurred because [the officer] only issued [the defendant] a citation and a warning." *Id.*

We rejected both arguments without referring to *Merchants Motor*. We concluded that "[a]n arrest by out-of-state officers is valid as a citizen's arrest under section 804.9(1) if made for a public offense committed in the

officers' presence." *Id.* at 744. We quoted an earlier case where we said, "When the Omaha officers came to Iowa, they ceased to be officers but they did not cease to be persons." *Id.* at 744–45 (quoting *State v. O'Kelly*, 211 N.W.2d 589, 595 (Iowa 1973)). We also found that Iowa Code section 804.9(1) gave the South Dakota officer authority not just to arrest the defendant but also to detain him: "[I]f, as we believe, [the South Dakota officer's] conduct amounted to something less than a technical arrest, it was not thereby less lawful." *Id.* at 744.

To some extent, *Merchants Motor* and *Lloyd* may appear to be at cross-currents, but we think the cases can be reconciled. *Lloyd* held that an out-of-state officer who ventured into Iowa *could* make a citizen's arrest, noting that he had "ceased to be [an] officer[]." *Id.* at 744–45 (quoting *O'Kelly*, 211 N.W.2d at 595). *Merchants Motor* held that an Iowa State Highway Commission officer, when acting "officially and under orders," *could not* make a citizen's arrest. 239 Iowa at 893, 32 N.W.2d at 776. The difference is whether the person was clothed with Iowa official authority at the time.

Further, *Lloyd* held that the authority to make a citizen's arrest included the authority to detain someone. 513 N.W.2d at 744. *Merchants Motor* held that the ability to make a citizen's arrest did not include the ability to issue a citation in lieu of arrest. 239 Iowa at 893, 32 N.W.2d at 776. There is a distinction between a detention and a citation. Even though the South Dakota officer issued citations in *Lloyd*, they were South Dakota rather than Iowa citations. *See* 513 N.W.2d at 743.[6] Furthermore,

---

[6]Our opinion explained,

> Officer Sandage gave defendant a warning ticket for driving without his taillights and, after running a check on defendant's South Dakota vehicle registration, also cited Lloyd for an expired license plate. Both offenses were low-class misdemeanors *under South Dakota law.*

their lawfulness was not at issue; what mattered was the stop. *See id.* (noting the defendant's contention that the South Dakota officer had no authority "to flag him down and detain him in Iowa"). Hence, both cases, in our view, can be aligned with the plain statutory language we have already discussed, which appears to allow only private persons to make citizen's arrests and only peace officers to issue citations.[7]

The IDOT directs our attention to an attorney general opinion regarding the authority of IDOT officers to make OWI arrests. *See* Op. Iowa Att'y Gen. No. 90–12–8, 1990 WL 484921 (Dec. 28, 1990). There, the attorney general stated,

> Notwithstanding the arrest limitation of section 321.477, the propriety of the implied consent procedures under chapter 321J do not necessarily depend on the law enforcement officer's authority to arrest an individual. *State v. Wagner*, 359 N.W.2d 487, 489 (Iowa 1984); Iowa Code § 321J.6 (1989). When a law enforcement officer initiates the implied consent procedures under chapter 321J, they act as a statutory agent of the DOT for purposes of administering the laws of this state pertaining to revocation of a drivers license. *Id.* at 490.

> Moreover, DOT peace officers may make arrests for OWI if, in the performance of their regular duties, the offense is committed or attempted in the officer's presence, pursuant to the citizen arrest powers of Iowa Code section 804.9 (1989). See also Iowa Code § 804.24 (1989) (arrests by private persons and disposition of prisoner); *State v. O'Kelly*, 211 N.W.2d 589, 595 (Iowa 1973), cert. denied, 417 U.S. 936, 94 S. Ct. 2652, 41 L. Ed. 2d 240 (1974) (arrest by Nebraska police officer of a person in Iowa treated as an arrest by private person); *Merchants Motor Freight v. State Hwy. Com'n*, 239 Iowa 888, 893, 32 N.W.2d 773, 776 (1948); 1988 Op.Att'yGen. 66 (L) (an arrest by municipal police officer, outside of jurisdiction, treated as an arrest by private person).

*Id.* at \*3.

---

*Lloyd*, 513 N.W.2d at 743 (emphasis added).

[7]In 1998, the general assembly added a provision to the Iowa Code expressly permitting out-of-state officers to make arrests in Iowa under certain circumstances. *See* 1998 Iowa Acts ch. 1140, § 1 (codified at Iowa Code § 804.7B (1999)).

"Although this court is not bound by an opinion of the attorney general, the opinion is entitled to the court's respectful consideration." *Bradley v. Iowa Dep't of Pers.*, 596 N.W.2d 526, 530 (Iowa 1999). "[W]hen a controversy addressed by an attorney general opinion reaches the court for determination, the court must enter upon an independent inquiry as to the interpretation to be placed upon the statute." *City of Clinton v. Sheridan*, 530 N.W.2d 690, 695 (Iowa 1995) (en banc); *see also Renda*, 784 N.W.2d at 17–21 (disagreeing with an attorney general opinion); *Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 369–70 (Iowa 2007) (same).

We do not part ways with the attorney general regarding the ability of properly trained IDOT officers to make OWI arrests. OWI is governed by a separate chapter, 321J. Hence, with respect to OWI, it is not controlling that Iowa law reserves certain chapter 321 enforcement duties to the DPS. *See* Iowa Code § 80.22; *id.* § 321.2(2). Iowa Code section 321J.1(8)(*e*) defines "peace officer" for purposes of chapter 321J to include any "law enforcement officer who has satisfactorily completed an approved [OWI] course." *Id.* § 321J.1(8)(*e*). Thus, an IDOT MVE officer, if properly trained, can enforce chapter 321J.[8]

Having said that, we are not persuaded by the attorney general that IDOT officers can make citizens' arrests under Iowa Code section 804.9 "in the performance of their regular duties." *See* Op. Iowa Att'y Gen., No. 90–12–8, 1990 WL 484921, at *3. The authorities cited by the attorney general, *O'Kelly* and *Merchants Motor*, do not support this conclusion for reasons we have already discussed. And they do not provide authority for

---

[8]The IDOT also notes that the general assembly has given authority to "all peace officers" to enforce the provisions of chapter 321 relating to school buses. *See* Iowa Code § 321.380 ("It shall be the duty of all peace officers and of the state patrol to enforce the provisions of sections 321.372 to 321.379."). Nothing we say herein today affects the authority of IDOT MVE officers to enforce Iowa Code sections 321.372 to 321.379.

IDOT MVE officers to issue *traffic citations* unrelated to operating authority, registration, size, weight, and load.

According to the IDOT, Iowa Code section 80.9A(7) implicitly recognizes that DPS officers have the authority to make citizens' arrests because it states, "The limitations specified in subsection 6 shall in no way be construed as a limitation on the power of [DPS] peace officers when a public offense is being committed in their presence." Iowa Code § 80.9A(7). And if DPS officers can make citizens' arrests, why not IDOT officers? But section 80.9A, which was adopted in 2008, could have been referring to the general authority of peace officers to make arrests for offenses committed in their presence. *See* 2008 Iowa Acts ch. 1031, § 88 (codified at Iowa Code § 80.9A (2009)); *see also* Iowa Code 804.7(1).

In addition, the IDOT draws our attention to Iowa Code section 321.488. It provides,

> The provisions of this chapter shall govern all peace officers in making arrests without a warrant for violations of this chapter for offenses committed in their presence, but the procedure prescribed herein shall not be exclusive of any other method prescribed by law for the arrest and prosecution of a person.

Iowa Code § 321.488. Our analysis accepts the possibility that IDOT MVE officers could have a separate source of authority outside of chapter 321 to issue traffic citations. For reasons we have explained, though, Iowa Code section 804.9 is not such a source of authority.

The IDOT also points out that according to the Restatement (Second) of Torts,

> [t]he peace officer has all the privileges of arrest which, by the rules stated in §§ 119 and 120, are conferred upon one not a peace officer. In such a case, his privilege to arrest is not dependent upon his being a peace officer; and it is immaterial whether he purports to act in his capacity as peace officer or as a private person . . . .

Restatement (Second) of Torts § 121, cmt. *d*, at 206 (Am. Law Inst. 1965). In Iowa, though, the general assembly has enacted legislation, which prevails to the extent it may conflict with a comment in the Restatement. *See* Iowa Code § 804.9.

For the foregoing reasons, we conclude that IDOT MVE officers, when engaged in their official duties, cannot use citizen's arrest authority to issue traffic citations.[9]

**V. Conclusion.**

For the foregoing reasons, we affirm the order of the district court.

**AFFIRMED.**

---

[9]Notably, the Illinois Supreme Court has held that police officers cannot rely on citizen's arrest authority when using radar guns to catch speeders. *People v. Lahr*, 589 N.E.2d 539, 540–41, 542 (Ill. 1992). In *Lahr*, the defendant was stopped by a police officer and issued a citation for speeding in an area outside of the police officer's jurisdiction. *Id.* at 539. The defendant challenged the police officer's use of the citizen's arrest defense. *Id.* at 539–40. Because the police officer employed a radar gun outside of his jurisdiction and the possibility of a private citizen obtaining and using a radar gun to conduct surveillance on roads was remote, the Illinois Supreme Court concluded that the police officer was asserting his police authority and not acting as a private person. *Id.* at 541. The court recognized that upholding a citizen's arrest in these circumstances would permit officers "to establish extraterritorial radar surveillance for speeding violations" outside of an officer's jurisdiction, which would essentially abolish the general rule regarding an officer's power outside of their jurisdiction. *Id.* at 542. Thus, in Illinois, when an officer uses tools of his or her office not available to private citizens to obtain evidence, the citizen's arrest will not be upheld. *Id.* at 540. We are not adopting the same reasoning here, but the outcome for practical purposes may be similar.